# Exhibit A

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| Beijing Daxing Huaxin Xingbang Science and Technology Development Research Center, Individually and on behalf of all others similarly situated )<br><br>And )<br><br>HXXB USA Research Center, Individually and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>Ken Paxton, )<br><br>In his official capacity as Attorney General for the State of Texas )<br><br>Defendant. ) | CASE NO. 1:25-cv-01981 |

**DECLARATION OF YU ZHANG**

Pursuant to 28 U.S.C. § 1746, under the penalties of perjury, Mr. Yu Zhang testifies as follows:

1.  My name is Yu Zhang.

2.  I am over the age of 18 and I am mentally competent to testify.

3.  The facts that I state below are all within my personal knowledge.

**BACKGROUND INFORMATION**

4.  I am a native-born citizen of the People's Republic of China. I both reside in and I am domiciled in Beijing, China. I have lived in Beijing for most of my life.

1

5. I am not now, nor have I ever been an employee, contractor, or agent of the Chinese government.

6. I am not now, nor have I ever been a member of the Chinese Communist Party.

7. I am not a U.S. citizen nor am I a U.S. permanent resident.

8. I am not a citizen of any other country. I am also not a permanent resident of any other country.

9. I am the Chairman of the Board of Beijing Daxing Huaxin Xingbang Science and Technology Development Research Center ("HXXB").

10. HXXB is a private non-enterprise unit and is headquartered and registered in Daxing, Beijing, China. HXXB was incorporated in 2022.

11. HXXB is organized as a non-profit social organization. Accordingly, it is free from governmental assets and influence in accordance with Chinese law.[1] (A true and correct copy of a translated version of HXXB's People-Run-Non-Enterprise Unit Registration Certificate, as well as an affidavit attesting to the trueness and accuracy of the translation is attached as Ex. A-1).

12. Accordingly, HXXB is not a contractor or agent of the Chinese government. HXXB is also not a contractor or agent of the Chinese Communist Party.

13. HXXB is not listed, nor has it ever been listed, on the Department of Defense's list entitled: "Entities Identified as Chinese Military Companies Operating in the United States in

---

[1] *See The Interim Regulations on Registration Administration of Private Non-enterprise Units*, (Promulgated by the State Council on Sept. 25, 1998, effective Oct. 25, 1998) art. 2 (China) ("Private non-enterprise units referred to in these Regulations are defined as social organizations which are established by enterprises, institutions, associations or other civic entities as well as individual citizens using non-state assets and conduct not-for-profit social service activities.") *available at*  https://www.lawinfochina.com/display.aspx?lib=law&id=14549&CGid (last visited Aug. 5, 2025).

Accordance with Section 1260H William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283).

14. HXXB is a non-profit chip research and development institute. HXXB has 18 employees.

15. HXXB's work focuses on advanced chip design, verification, and edge-computing solutions. HXXB's mission is to democratize semiconductor technology and drive innovation in a manner that benefits the public good for everyone—not any country.

16. HXXB's mission is consistent with and complementary to, and in no way adversarial to the research aims and ambitions of the United States or the State of Texas.

17. HXXB has earned a deservedly laudable reputation for developing system-on-chip platforms, low-power analog integrated circuits, and application-specific modules designed for use in fields such as education, renewable energy, and public health.

18. HXXB wants to expand its operations into the United States. Accordingly, HXXB has formed a U.S.-based, non-profit[2] subsidiary called HXXB USA Research Center ("HXXB USA"). HXXB owns and controls 100% of HXXB USA's outstanding stocks. (A true and accurate copy of HXXB USA's stock ledger is attached as Ex. B-1).

19. HXXB USA's EIN is 39-3622604. (A true and accurate copy of its EIN is attached as Ex. C-1).

20. HXXB USA is incorporated in Michigan. (A true and accurate copy of its certificate of formation from the state of Michigan is attached as Ex. D-1).

---

[2] HXXB USA has been organized under 26 U.S. Code § 501(c)(3).

3

## <u>AUSTIN IS AN ATTRACTIVE MARKET TO PLAINTIFFS BECAUSE IT IS A SEMICONDUCTOR HUB</u>

21. According to an April 2025 IBIS*World* U.S. Industry State Report *Semiconductor & Circuit Manufacturing in Texas*, the Texas semiconductor market is robust. (A true and accurate copy of this report is attached as Ex. E-1). According to current estimates, the Texas semiconductor market is a $12.8 billion industry. Currently, there are 17,303 total semiconductor jobs in Texas. This means that Texas employs the most workers in the semiconductor industry in the United States. And these workers are well compensated. The average worker in the semiconductor industry in Texas makes $185,000 annually which is the second highest in the sector in the United States. Ex. E-1 at 2.

22. In Travis County, where Austin, Texas is located, there are 18 semiconductor establishments, more than any other city in the State. This also accounts for 25% of the total number of semiconductor establishments in the entire State. Of the $12.8 billion generated in revenue annually from the Texas semiconductor industry, Travis County generates $3.1 billion—nearly 25% of the total revenue. Ex. E-1 at 6.

23. Travis County also pays the second highest wages in Texas for semiconductor workers. Ex. E-1 at 7.

24. Internationally known semiconductor companies such as NXP Semiconductors, Silicon Labs, and Texas Instruments are either headquartered in Austin, Texas or have a significant presence in Austin, Texas.

25. The University of Texas at Austin intends to add a master's degree program later this year, entitled Master of Science in Engineering, emphasizing Semiconductor Science.

26. The State of Texas also has a dominant position in the domestic household appliance market. HXXB USA's low-power system-on-chip platforms and public-benefit design tools can serve as a foundation for embedding intelligence and connectivity into next-generation home appliances, HVAC systems, and energy-efficient consumer products. Ex. E-1.

**THE BENEFITS HSSB USA WILL BRING TO THE GREATER AUSTIN AREA AND THE STATE OF TEXAS MORE BROADLY**

27. HXXB USA's Austin office will operate as a non-profit hub dedicated to research, workforce training, and the development of socially impactful technology.

28. HXXB USA's Austin office intends to engage a broad spectrum of stakeholders across the academic, public, industrial, entrepreneurial, and community sectors.

29. HXXB USA intends to work with the University of Texas at Austin and Austin Community College. Both institutions are recognized for their advanced technical programs. HXXB USA will provide research fellowships to students and faculty at these institutions. These research fellowships will expose students and faculty alike to hands-on experiences with real-world system-on-chip design, chip verification tools, and open-source hardware innovation. HXXB's and HXXB USA's mission is for programs like these to serve as a pipeline for building a new generation of skilled semiconductor professionals trained in both theory and application. HXXB USA seeks to train the next generation of semiconductor professionals by offering these internships, fellowships, and curriculum-based collaborations.

30. HXXB USA also wishes to serve the State of Texas and local governments as a valuable partner in advancing the State's long-term innovation and economic competitiveness goals.

HXXB USA is committed to providing access to technology for all. HXXB USA is also committed to sustainable innovation. As a non-profit, HXXB USA will ensure transparency and public benefit.

31. HXXB USA will also serve original equipment manufacturers and semiconductor integrators who want to collaborate with a mission-driven chip design team. HXXB USA is happy to engage with original equipment manufacturers and semiconductor integrators on joint research, design consultation, prototyping, and application-specific system-on-chip verification projects. Additionally, appliance and consumer electronics manufacturers and embedded device makers throughout Texas, will benefit from HXXB USA's low-power and modular chip offerings that are specifically tailored for energy-efficient smart systems. Ex. E-1 at 4.

32. HXXB USA also intends to assist Texas-based startup companies and entrepreneurs. Plaintiffs have found that many startups lack access to affordable semiconductor design services. Also, startups typically lack the experience to navigate IP licensing. HXXB USA's Austin office will fill this gap by offering subsidized design tools, mentorship from experienced engineers, and access to shared Research and Development infrastructure. HXXB USA will also provide open-source intellectual property and design tools to startups, educational partners, and community-based developers.

33. Lastly, HXXB USA intends to partner with the Austin community to develop public workshops, bilingual outreach programs, and co-created educational initiatives. These efforts will assist in ensuring that innovation opportunities are available to all Texans, including those in rural, low-income areas. HXXB USA wants to proactively recruit and

train candidates from these backgrounds. HXXB USA will accomplish this through partnerships with vocational institutions and workforce boards.

34. HXXB USA also wants to build long-term brand and reputational trust and good will. It wants to establish a long-term formidable license to operate. It intends to engage in business-to-business outreach through having a presence at regional trade expos, semiconductor roundtables, and co-sponsored technology demonstrations with university and industry partners. HXXB USA also intends to have a visible social media presence.

### HXXB USA'S FINANCIAL PROJECTIONS THROUGH 2029

35. If HXXB USA were able to lease office space and begin operations, which it is not, HXXB USA projects approximately $500,000 in revenue in the first two quarters of operation.

36. HXXB USA projects that its revenue will increase incrementally.

   a. 2026: $1.5 million from the initiation of joint research programs with academic institutions and government funding sources;

   b. 2027: $3.0 million from several multi-year contracts with universities and public sector grants which will aid in HXXB USA's hiring of additional local employees and create more efficiencies;

   c. 2028: $5 million from service contracts with appliance manufacturers and smart device startups; and

   d. 2029: $7.5 million from expanded project engagements, continued licensing of non-commercial IP for public-good applications, and additional success in grant acquisition.

37. HXXB USA is confident that it will have established a robust foundation for breakeven operations by 2030.

38. By 2030, HXXB USA's Austin office's key revenue channels are anticipated to include contract-based research and development services provided to academic labs, municipal projects, and small to mid-sized companies seeking custom integrated circuit solutions. HXXB USA's Austin office intends to receive funding from collaborative grants co-written with university faculty, particularly in the areas of STEM education, sustainable technology, and health innovation. HXXB USA also expects income from its open chip IP program, which allows for royalty-free or cost-recovery-based licensing for non-profit and educational applications.

**HXXB USA'S EFFORTS TO LEASE PROPERTY IN THE GREATER AUSTIN AREA**

39. Before HXXB USA can conduct its business in Austin, Texas, it is imperative, and mission-critical that HXXB USA lease office space in the greater Austin area to establish a base of U.S. operations.

40. HXXB USA has actively attempted to lease office space with enough workspace for between 3 to 5 people, with the potential to expand to 20 people.

41. To obtain office space for HXXB USA, I worked with Guanyi Zhang, an executive at HXXB. On behalf of HXXB USA, Mr. Guanyi Zhang contacted various realty agents in the Austin area.

42. Balcones Holdings, LLC and Urban Office, LLC ("Companies") have office space available and based on information and belief are, and remain willing to lease the office space to HXXB USA at the following locations: 5926 Balcones Drive Suite 212, Austin, TX 78731 and 11211 Taylor Draper Lane Suite 14, Austin TX 78759, respectively.

43. As HXXB USA is in its infancy, financial statements for the organization do not exist. Accordingly, based on information and belief, the Companies requested financial

8

statements from HXXB as part of their stipulation that HXXB guarantee the lease. The Companies approved HXXB USA's financial condition. It is my understanding that the Companies conducted a background check as well, which was cleared by HXXB.

44. The Companies both sent HXXB a landlord-executed lease agreement with the terms and conditions for a three-year lease. The lease terms were meant to begin on October 15, 2025, and November 15, 2025, respectively. (A true and correct copy of the basic terms of the lease and the signature page of the Taylor Draper Lane unit are attached as Ex. F-1. As the other lease is subject to a confidentiality clause, it has not been attached to this Complaint. However, Plaintiffs are happy to file a motion for submission of the lease under seal if the Court would find it appropriate or helpful to do so in reaching a decision on the merits).

45. But for S.B. 17, one or both leases would have been executed and the space would be occupied today by HXXB USA.

46. HXXB USA made deposits on these office spaces, guaranteed by HXXB, totaling no less than $5,625.00. These deposits have not been recovered. *See* Ex. G-1. These amounts also do not account for the extensive overhead costs incurred by Plaintiffs in securing space it would be occupying today but for S.B. 17 and the Attorney General's enforcement authority under same.

47. Hence, Plaintiffs have established that they have suffered, and continue to suffer, significant and immediate cognizable financial injuries—directly traceable to the Attorney General's enforcement authority under S.B. 17.

## FEDERAL IMMIGRATION LAW

48. An office needs occupants.

49. HXXB USA has already retained a U.S. citizen employee who resides in the greater Austin, Texas area. Once HXXB USA is lawfully permitted by the State of Texas to secure an office space in the greater Austin area, in addition to engaging U.S. citizen or permanent resident employees or consultants, HXXB USA intends to retain and transfer new employees under an L-1A or L-1B visa to bring specialized knowledge and managerial support in furtherance of its mission.

50. For reasons explained below, federal law mandates an affiliation between the two entities to conduct business operations in the State of Texas, and in the United States more broadly.

51. Pursuant to Vol. 2, Pt. L, Chapter 5 of the U.S. Citizenship & Immigration Services ("USCIS") Policy Manual, and associated federal laws and regulations, for an applicant to be approved for an L-1 visa, he or she must have worked for a "qualifying organization" outside the United States for at least one continuous year within the three years immediately preceding the L-1A or L-1B application. An organization cannot transfer an individual to work in the United States as an L-1 nonimmigrant unless the organization has a qualifying U.S. entity to employ the L-1 beneficiary.

52. USCIS regulations also expressly provide that when an employer/petitioner seeks to transfer an employee under an L-1 visa, the employer/petitioner bears the burden of establishing that it has secured physical premises that are "sufficient". This is established by evidence the employer/petitioner has obtained and will maintain a dedicated and functional office space suitable for the position for at least one year. A valid lease is required at the time the petition is filed, or it will be denied.

53. HXXB USA cannot, in furtherance of its important mission, petition for any L-1 visas for managerial employees or those with specialized knowledge without violating either S.B.

17 or the USCIS regulations and policy. In fact, it is impossible for HXXB USA to comply with both simultaneously as HXXB USA cannot lease office space in the State of Texas for at least one continuous year under S.B. 17 as is necessary to satisfy U.S. federal immigration law; nor can it lease office space for one continuous year plus the USCIS' own anticipated processing timeframe.

### IRREPARABLE HARM

54. I have reviewed S.B. No. 17. I have read news articles about it and have been reliably informed of its implications.

55. I understand that the law prohibits me, a Chinese citizen domiciled in China, or HXXB from acquiring a lease interest in office space in the State of Texas that extends beyond a year. I also know that HXXB USA, a subsidiary of an organization registered and headquartered in Beijing, China, is prohibited from signing a lease agreement due to S.B. No. 17's prohibitions, even though it is a U.S.-based non-profit. Because S.B. 17 automatically, without notice or a hearing, voids leases violative of the bill, Plaintiffs and their employees are subject to the immediate risk of significant enforcement action from the Attorney General if they enter a lease.

56. Fear of a criminal or civil conviction has broad implications for HXXB and HXXB USA's directors, agents, and employees who are involved in, if even tangentially, a leasing transaction occurring after September 1, 2025. HXXB and HXXB USA transact business elsewhere in the United States. Any criminal or civil investigation referred by the Attorney General for prosecution risks Plaintiffs' personnels' ability to obtain U.S. visas and enter the United States, and travel in interstate commerce. If any matter referred for prosecution results in an arrest warrant, this subjects Plaintiffs' personnel to the immediate risk of their

11

being detained at their port of entry or, if traveling interstate, their being detained in another state until State of Texas officials arraign them and bring them to Texas for prosecution.

57. Due to S.B. No. 17's criminal sanctions that include a minimum sentence of six months in prison and a maximum sentence of two years in prison, I am reluctantly compelled to **not** sign any lease agreement in the State of Texas while the Sections of S.B. 17 impacting the Plaintiffs remain in effect—even though I had every intention of doing so and instructed the issuance of deposits on close to fully-executed leases that were only missing my signature.

58. Additionally, due to S.B. No. 17's civil enforcement provisions, I will reluctantly **not** sign any of the referenced lease agreements, or any other lease agreement in the State of Texas, because I do not want to subject HXXB or HXXB USA to potential liability from the Attorney General at a minimum of $250,000. Likewise, I do not want to subject HXXB or HXXB USA to an investigation by the Attorney General.

59. In sum, the Attorney General's enforcement authority under S.B. 17, prohibiting and penalizing long-term leasehold interests of a year or more after September 1, 2025, has significantly impacted and disrupted Plaintiffs' business activities, in the State of Texas and elsewhere in the United States. These injuries will not cease until the court declares S.B. No. 17, Sections 5.253(2)(A) and (C) and subsection (3) and Section 5.255(e), effective September 1, 2025, as unconstitutional.

60. I am frustrated that HXXB USA cannot open an office space in Texas, despite our best efforts. We have everything ready to start our business in Austin, Texas to further our mission for everyone's societal benefit. But without an office in the greater Austin area, we will not be able to transact in business there. I am also worried that our plans to conduct

12

business in Austin, Texas will never materialize should S.B. No. 17, Sections 5.253(2)(A) and (C) and subsection (3) and Section 5.255(e), effective September 1, 2025, remain in force and effect.

61. I ask this Court for relief to help the named Plaintiffs, without fear of investigation or civil or criminal prosecution by the Attorney General, to achieve our mission of bringing more knowledge, technical expertise, and a tax base to the great State of Texas. This mission should not be denied simply because we are a Chinese entity that owns a U.S.-based non-profit, who both are not in any way affiliated with the Chinese government or the Chinese Communist Party.

***

Pursuant to 28 U.S.C. § 1746, and pursuant to TEX. CIV. PRAC. & REM. CODE § 132.001, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 29, 2025

Yu Zhang

13