**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| BEIJING DAXING HUAXIN XINGBANG TECHNOLOGY DEVELOPMENT RESEARCH CENTER, individually and on behalf of all other similarly situated and HXXB USA RESEARCH CENTER, individually and on behalf of all others similarly situated,<br><br>　　　　*Plaintiffs*,<br><br>v.<br><br>KEN PAXTON, In his official capacity as Attorney General for the State of Texas,<br><br>　　　　*Defendant*. | CASE NO. 1:25-CV-1981-RP |

**DEFENDANT'S MOTION TO DISMISS**

| CONTENTS | TABLE OF CONTENTS | |
|---|---|---|
| | | **Page** |

TABLE OF AUTHORITIES ...................................................................... **Error! Bookmark not defined.**

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................1

LEGAL STANDARDS ............................................................................................ 2

ARGUMENT ........................................................................................................3

    I.   Plaintiffs lack standing because they have not pled an Article III injury ............................3

        A. Plaintiffs have not pled that a credible threat of enforcement exists. ............................. 4

        B. Plaintiffs' alleged injuries are not traceable to the Attorney General. ...........................5

    II.  Sovereign immunity bars Plaintiffs' claims and the *Ex parte Young* exception does not apply .............................................................................................................. 6

        A. The Attorney General is not required to initiate civil proceedings or refer the matter for criminal law enforcement. ........................................................................7

        B. The Attorney General has not demonstrated a willingness to exercise his authority to enforce the Challenged Provisions and Plaintiffs have not pled facts showing otherwise. ................................................................................... 8

        C. The Attorney General has taken no action which compels or constrains Plaintiffs to obey the Challenged Provisions and Plaintiffs have not pled facts showing otherwise. ................................................................................................ 8

    III.  Plaintiffs have not stated a plausible claim for relief. .......................................... 9

        A. HXXB lacks the right to sue in federal court. ................................................10

        B. Plaintiffs have not stated a plausible procedural due process claim .............................. 11

CONCLUSION .................................................................................................. 11

CERTIFICATE OF SERVICE .................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*A & R Eng'g and Testing, Inc. v. Scott,*
    72 F.4th 685 (5th Cir. 2023) ..................................................................................5

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc., et al.,*
    591 U.S. 430 (2020) ..................................................................................10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................3, 9, 3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................3

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013).................................................................................. 4

*Fed. Election Comm'n v. Cruz,*
    596 U.S. 289 (2022) .................................................................................. 6

*Kadi v. Geithner,*
    42 F.Supp.3d 1 (D.D.C. 2012) .................................................................. 11

*La Union Del Pueblo Entero v. Abbott,*
    151 F.4th 273 (5th Cir. 2025) ..................................................................3, 4

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,*
    594 F.3d 383 (5th Cir. 2010) .................................................................. 2

*McMurtray v. Holladay,*
    11 F.3d 499 (5th Cir. 1993) .................................................................. 11

*Mi Familia Vota v. Ogg,*
    105 F.4th 313 (5th Cir. 2024) ..................................................................6, 7, 8, 9, 8

*Nat'l Press Photographers Ass'n v. McCraw,*
    90 F.4th 770 (5th Cir. 2024) ..................................................................3, 4, 5, 4

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001).................................................................. 2

*Randall D. Wolcott, M.D., P.A. v. Sebelius,*
    635 F.3d 757 (5th Cir. 2011) .................................................................. 2

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014)..................................................................................3

*U.S. v. Approximately $299.873.70 Seized from a Bank of America Account,*
    15 F.4th 1332 (11th Cir. 2021) ..................................................................10

*U.S. v. Verdugo-Urquidez,*
      494 U.S. 259 (1990) ..................................................................................................10

*United States v. Bollinger Shipyards, Inc.,*
      775 F.3d 255 (5th Cir. 2014)........................................................................................3

**Constitutional Provisions & Statutes**

Tex. Prop. Code § 5.252 ...................................................................................................7

Tex. Prop. Code § 5.253 ............................................................................................. 1, 3, 7

Tex. Prop. Code § 5.255 ............................................................................................ 3, 5, 7

**Rules & Regulations**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 2

Defendant Ken Paxton, in his official capacity as Attorney General of Texas (the Attorney General), hereby files this Motion to Dismiss and would show the Court as follows:

### INTRODUCTION

SB 17, a Texas law signed by the Governor on June 20, 2025, is an exercise of Texas's police power to protect Texas and its residents by restricting certain totalitarian governments of certain designated countries from purchasing land in Texas. SB 17 went into effect on September 1, 2025. To prevent totalitarian governments from circumventing this restriction, SB 17 prohibits certain property purchases and leaseholds by companies under the control of companies or individuals located in those nations. HXXB and HXXB USA are entities subject to SB 17's restrictions. HXXB is an organization headquartered in China. ECF 4 at 5. HXXB USA is a wholly owned subsidiary of HXXB. ECF 4 at 6. HXXB and HXXB USA ("Plaintiffs") allege several provisions of SB 17 violate their rights under the Supremacy Clause, Commerce Clause, and Due Process Clause of the United States Constitution. ECF 4 at 25–37. They are sorely mistaken. In fact, Plaintiffs' attempted circumvention of SB 17 is precisely the type of conduct the Texas Legislature lawfully intended to prevent.

### BACKGROUND

On June 20, 2025, the Governor signed SB 17 into law. SB 17 prevents companies like HXXB and HXXB USA from, among other things, acquiring a multi-year commercial leasehold interest. *See* Tex. Prop. Code § 5.253. On August 6, 2025, three weeks before SB 17 took effect, HXXB USA filed articles of incorporation with the State of Michigan. ECF 4-6 at 3. Shortly thereafter, HXXB negotiated two leases, the "Canyon Hills Lease" and the "Balcones Lease," (jointly "the Leases"). ECF 4-8 at 2; ECF 4-9 at 5.

The identification date of the Balcones Lease was August 12, 2025. ECF 4-9 at 5. The Balcones Lease proposed a start date of October 1, 2025. ECF 4-9 at 5.[1] The Balcones Lease offers

---

[1] Yu Zhang's Amended Declaration states that the Leases were set to begin on October 15 and November 15. ECF 4-2 at 10. However, the exhibits attached to Plaintiffs' Amended Complaint represent the start dates as October 1, ECF 4-9 at 5, and November 15, ECF 4-8 at 2.

one suite for 36 months at a rate of $1,120.58 per month for the first year and escalating to $1,170.02 per month for the second year, and $1,219.46 per month for the third year. ECF 4-9 at 5. The Balcones Lease required a security deposit of $2,111.97. ECF 4-9 at 5. Plaintiffs paid the security deposit and the first month's rent on September 18, 2025. ECF 4-9 at 4, 6.

The effective date of the offer for the Canyon Hills Lease was October 1, 2025. ECF 4-8 at 2. The Canyon Hills Lease proposed a start date of November 15, 2025. ECF 4-8 at 2. The Canyon Hills Lease offers one 565 square foot suite for 36 months at a rate of $1,400 per month for the first year, then escalating by $50 per month each following year up to $1,500 per month in the last year of the lease. ECF 4-8 at 2. The Canyon Hills Lease required a security deposit of $1,500. ECF 4-8 at 2. Plaintiffs paid the security deposit on October 15, 2025. ECF 4-9 at 2–3.

After negotiating the Leases and paying the deposits and first month's rent, the Chairman of HXXB's Board refused to sign the Leases, allegedly because of SB 17. ECF 4-2 at 13. Plaintiffs now claim that SB 17 caused them to sustain monetary damages—from negotiating the Leases they now refuse to sign—and claim that four provisions in SB 17 violate their constitutional rights. To the contrary, Plaintiffs' nefarious conduct illustrates the need for SB 17, not its unconstitutionality.

## LEGAL STANDARDS

"The district court must dismiss the action if it finds that it lacks subject matter jurisdiction." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); Fed. R. Civ. P. 12(b)(1). "The party asserting jurisdiction bears the burden of proof for a 12(b)(1) motion to dismiss." *Sebelius*, 635 F.3d at 762.

A count should be dismissed when it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When reviewing the sufficiency of a complaint, the main objective is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). For a claim to be plausible on its face, the plaintiff must sufficiently plead "factual content that allows the court to

2

draw the reasonable inference that the defendant is liable for the misconduct alleged." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court must accept all wellpleaded facts as true, viewing them in the light most favorable to the plaintiff, a plaintiff's legal conclusions need not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Id.*

## ARGUMENT

### I.    Plaintiffs lack standing because they have not pled an Article III injury.

Plaintiffs have not pled an Article III injury for several reasons. First, Plaintiffs have not pled facts showing a credible threat of enforcement of SB 17 exists. Second, Plaintiffs have not pled an injury in fact traceable to the conduct of the Attorney General. Article III standing requires the plaintiff to plead an injury in fact that is traceable to the conduct of the defendant and redressable by the court. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 781 (5th Cir. 2024). In pre-enforcement cases like the present, a plaintiff must plead three things to show an injury: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest;" (2) that the intended future conduct is arguably proscribed by the statute; and (3) that the threat of future enforcement of the statute is "substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161, 162, 164 (2014). "[P]laintiffs must establish standing for each and every provision they challenge." *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 285 (5th Cir. 2025) (quoting *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019)).

Here, Plaintiffs bring a pre-enforcement challenge against sections 5.253(2)(A) and (C) and subsection (3) and section 5.255(e) of the Texas Property Code (the "Challenged Provisions"). ECF 4 at 1. Plaintiffs claim these provisions violate the Commerce Clause, Plaintiffs' procedural and substantive due process rights, and are preempted by federal law. ECF 4 at 25–37. To support standing, Plaintiffs allege essentially two injuries: (1) wanting to sign a commercial lease longer than one year but not doing so due to fear of future enforcement of SB 17 and (2) a loss of deposits

3

and undefined overhead costs resulting from Plaintiffs' negotiation of two leases that Plaintiffs will not sign while SB 17 is in effect. ECF 4 at 3, 16–17, 20–21; ECF 4-2 at 10, 13. Neither injury is sufficient to confer Article III standing. First, Plaintiffs have not sufficiently pled facts alleging a credible threat of enforcement of the Challenged Provisions. Second, neither of Plaintiffs' alleged injuries are traceable to conduct by the Attorney General. As such, Plaintiffs have not carried their burden to plead facts showing Article III standing and their claims should be dismissed.

### A. Plaintiffs have not pled that a credible threat of enforcement exists.

Plaintiffs have not satisfied the Article III injury requirement for pre-enforcement challenges because they have not pled facts showing a credible threat of enforcement exists. Even if a statute "directly regulate[s]" a plaintiff, "that does not *ipso facto* establish injury." *La Union Del Pueblo Entero*, 151 F.4th at 287 (citing *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 446 (5th Cir. 2019)). "In the absence of any imminent or even credible threat" of enforcement, "Plaintiffs lack standing to preemptively challenge" SB 17. *See Nat'l Press Photographers Ass'n*, 90 F.4th at 782. When a government official has taken no steps to enforce a statute, no credible threat of enforcement exists. *See id.*; *see also La Union Del Pueblo Entero*, 151 F.4th at 286. Importantly, it is the plaintiff's burden to plead facts showing a credible threat of enforcement "not the Government's burden to disprove standing by revealing details of its [enforcement] priorities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 n.4 (2013).

Here, Plaintiffs have not pled any facts showing the Attorney General has taken any steps to enforce the Challenged Provisions against Plaintiffs or anyone else. As such, Plaintiffs have not pled facts showing a credible threat of enforcement. Because Plaintiffs have not pled a credible threat of enforcement, Plaintiffs lack standing to bring their pre-enforcement claims and they should be dismissed.

4

### B. Plaintiffs' alleged injuries are not traceable to the Attorney General.

Plaintiffs have not pled facts showing their alleged injuries are traceable to the Attorney General.[2] To establish standing an injury must be fairly traceable to the defendant's conduct. *Nat'l Press Photographers Ass'n*, 90 F.4th at 781. "Traceability is particularly difficult to show where the proffered chain of causation turns on the government's speculative future decisions regarding whether and to what extent it will bring enforcement actions in hypothetical cases." *A & R Eng'g and Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023) (citing *Clapper*, 568 U.S. at 412–14). "[W]here the plaintiff fails to allege such actual or threatened enforcement, the Supreme Court has instructed [courts] to reject the mere potential for enforcement as a 'highly attenuated,' 'speculative chain of possibilities' that cannot trace an injury to the government." *Id.* (quoting *Clapper*, 568 U.S. at 410). As discussed *supra*, Plaintiffs have not alleged facts showing the Attorney General has actually enforced or threatened to enforce the Challenged Provisions, or any part of SB 17, against Plaintiffs or anyone else. For this reason, Plaintiffs lack standing to bring any of their claims.

Similarly, the voiding of Plaintiffs' potential future lease is not traceable to the Attorney General. As Plaintiffs admit, "S.B. 17 does not require action on the part of the Attorney General to immediately void a lease[.]" ECF 4 at 4 n. 5. All leases that violate SB 17 are void as a matter of law. Tex. Prop. Code § 5.255(e). "[T]he Challenged Provisions are self-executing." ECF 4 at 7. As such, Plaintiffs admit their alleged future harm will occur regardless of the Attorney General's actions. Thus, it is not traceable to the Attorney General's conduct.

Plaintiffs' loss of deposits and overhead costs does not rescue their want of standing. Plaintiffs attempt to manufacture standing by voluntarily seeking out leases they know they will not sign while SB 17 is in effect. *See, e.g.,* ECF 4-2 at 13 ("due to S.B. No. 17's civil enforcement

---

[2] Plaintiffs' injuries focus on HXXB USA's ability to enter into a multi-year commercial lease. ECF 4 at 16–17. HXXB has not alleged it wishes to enter into a multi-year commercial lease. *See, e.g.,* ECF 4 at 16–17. HXXB's only involvement is its status as a guarantor for HXXB USA's potential multi-year commercial lease. *See* ECF 4 at 16. Because HXXB has not alleged it wishes to engage in conduct in contravention with SB 17, HXXB lacks standing.

provisions, I will reluctantly ***not*** sign any of the referenced lease agreements, or any other lease agreement in the State of Texas"); ECF 4-8 at 2 (illustrating Plaintiffs negotiated the Canyon Hills Lease after SB 17 went into effect and before filing the present suit); ECF 4-9 at 2–3 (illustrating Plaintiffs paid a security deposit for the Canyon Hills Lease after SB 17 went into effect); ECF 4-9 at 5 (illustrating Plaintiffs negotiated the Balcones Lease after SB 17 passed but before it went into effect); ECF 4-9 at 6 (illustrating Plaintiffs paid a deposit and first month's rent on the Balcones lease after SB 17 went into effect).

Plaintiffs, however, cannot show that they have been or will likely be subjected to enforcement of SB 17 by the Attorney General. *See Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 297 (2022) (citing *Clapper*, 568 U.S. at 416) ("Their problem, however, was that they could not show that they had been or were likely to be subjected to that policy in any event."). Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is certainly not impending." *Clapper*, 568 U.S. at 416 (citing *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam)). For these reasons Plaintiffs lack standing to bring their pre-enforcement challenges.

## II. Sovereign immunity bars Plaintiffs' claims and the *Ex parte Young* exception does not apply.

Sovereign immunity bars Plaintiffs' claims against the Attorney General. "Generally, state sovereign immunity precludes suits against state officials in their official capacities." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (quoting *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020)). "The legal fiction of *Ex parte Young*, however, provides an 'exception to Eleventh Amendment sovereign immunity' in the subset of cases to which it applies." *Id.* (quoting *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019)). "The exception permits federal courts to enjoin prospective unconstitutional conduct by 'individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature.'" *Id.* (quoting *Ex parte Young*, 209 U.S. 123, 155–56 (1908)). "To be a proper defendant under *Ex parte Young*, a

state official 'must have some connection with the enforcement of' the law being challenged." *Id.* (quoting *Ex parte Young*, 209 U.S. at 157). To have a sufficient connection to enforcement, the state official must have (1) a "particular duty to enforce the statute in question;" (2) "demonstrated willingness to exercise that duty;" and (3) taken some action which "compel[s] or constrain[s] persons] to obey the challenged law." *Id.* (quoting *Texas All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)). Here, none of the prongs are met.

### A. The Attorney General is not required to initiate civil proceedings or refer the matter for criminal law enforcement.

The Attorney General lacks a sufficient connection to the enforcement of the Challenged Provisions and SB 17 as a whole. "Discretionary authority to act, on its own, is insufficient to give rise to a particular duty to act, *i.e.*, a 'sufficient connection [to] enforcement.'" *Ogg*, 105 F.4th at 327 (quoting *City of Austin*, 943 F.3d at 998) (alteration in original). Here, like in *Ogg*, the Challenged Provisions do not *command* the Attorney General to initiate a civil suit or refer the matter for criminal prosecution. Tex. Prop. Code § 5.255. In fact, the Challenged Provisions do not command the Attorney General to do anything. Sections 5.253(2)(A) and (C) and subsection (3) describe to whom the statute applies. Tex. Prop. Code §§ 5.253(2)(A), (2)(C), (3). Section 5.255(e) states any leasehold interests which violate SB 17 are automatically void. Tex. Prop. Code § 5.255(e); *see also* Tex. Prop. Code §§ 5.252, 5.253. Plaintiffs admit "S.B. 17 does not require action on the part of the Attorney General to immediately void a lease[,]" ECF 4 at 4 n. 5, and that "the Challenged Provisions are self-executing[,]" ECF 4 at 7. Because the Attorney General has no connection to the automatic voiding of a lease in § 5.255(e), the *Ex parte Young* exception to sovereign immunity does not apply.

Plaintiffs' allegations that they substantially fear potential enforcement derived from other sections of SB 17 fare no better. While it is true that sections 5.255 (a–b) require the Attorney General to establish procedures for investigations and to investigate potential violations, § 5.255(c) does not mandate the Attorney General initiate a civil action against any party or refer a matter for criminal prosecution even if he determines that a violation occurred. Tex. Prop. Code §§ 5.255(a–

c). Absent more, this discretionary authority is insufficient. *See Ogg*, 105 F.4th at 327.

### B. The Attorney General has not demonstrated a willingness to exercise his authority to enforce the Challenged Provisions and Plaintiffs have not pled facts showing otherwise.

Sovereign immunity bars Plaintiffs' claims against the Attorney General because Plaintiffs have not pled facts showing the Attorney General demonstrated a willingness to enforce the Challenged Provisions. To have a "demonstrated willingness" to enforce the challenged statute, the state official "'must have taken some step to enforce' the statute." *Ogg*, 105 F.4th at 329 (quoting *Texas Democratic Party*, 961 F.3d at 401). The "bare minimum appears to be 'some scintilla' of affirmative action by the state official." *Id.* (quoting *Texas Democratic Party*, 961 F.3d at 401). "Such action may be shown through past enforcement of the statute." *Id.* (citing *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017)). "If the plaintiffs bring a pre-enforcement action, as has occurred here, prior enforcement obviously will be lacking. Nevertheless, we still require 'some scintilla' of affirmative action by the state official." *Id.* (quoting *Texas Democratic Party*, 961 F.3d at 401). Importantly, "what is sufficient for standing will not necessarily establish an enforcement connection." *Id.* at 330.

Here, Plaintiffs have not alleged facts showing the Attorney General has taken any action demonstrating a willingness to enforce the Challenged Provisions or any portion of SB 17. Plaintiffs' Complaint only alleges that the Attorney General *can* enforce SB 17. *E.g.,* ECF 4 at 11. This is not sufficient to waive sovereign immunity. *See Ogg*, 105 F.4th at 327. The relevant official must demonstrate a willingness to enforce the challenged statute. *See id.* at 329. Plaintiffs have made no such showing. Therefore, the *Ex parte Young* exception does not apply, and Plaintiffs' claims should be dismissed pursuant to sovereign immunity.

### C. The Attorney General has taken no action which compels or constrains Plaintiffs to obey the Challenged Provisions and Plaintiffs have not pled facts showing otherwise.

Sovereign immunity bars Plaintiffs' claims against the Attorney General because Plaintiffs have not pled facts showing the Attorney General has taken actions which compel or constrain

Plaintiffs to obey the Challenged Provisions. "To determine whether an official has a sufficient connection to the challenged statute, we analyze what 'enforcement' means in the context of that statute." *Ogg*, 105 F.4th at 332 (citing *City of Austin*, 943 F.3d at 1000). "Panels in this circuit have defined 'enforcement' as 'typically involv[ing] compulsion or constraint.'" *Id.* (quoting *City of Austin*, 943 F.3d at 1000) (alteration in original). If the "official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Id.* (quoting *Texas All. for Retired Ams*, 28 F.4th at 672). Here, just as with the "willingness" prong, the complaint and supporting declarations do not reflect any facts showing that the Attorney General has engaged in acts of compulsion or constraint to enforce the Challenged Provisions or SB 17 as a whole. Importantly, the "existence of the challenged statutes" combined with a state official's "authority" to enforce it is "insufficient to demonstrate compulsion or constraint under our *Ex parte Young* precedent." *Id.* "[T]he mere fact that the state official *has* the authority to enforce the challenged statute cannot be said to 'constrain' the party challenging the statute." *Id.* (quoting *City of Austin*, 943 F.3d at 1001) (cleaned up). Nor does the authority to investigate violations of a given statute "rise to the level of compulsion or constraint needed." *Id.* (quoting *Ostrewich v. Tatum*, 72 F.4th 94, 101 (5th Cir. 2023)). For all of these reasons, the *Ex parte Young* exception does not apply and Plaintiffs' claims should be dismissed pursuant to sovereign immunity.

## III. Plaintiffs have not stated a plausible claim for relief.

Plaintiffs have not stated a plausible claim for relief. To survive a 12(b)(6) motion to dismiss a plaintiff must plead facts which, taken as true, show a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Plaintiffs have not done so for any of their claims because (1) they lack standing due to their failure to plead facts showing an injury traceable to the Attorney General and (2) sovereign immunity bars their claims. *See supra* §§ I, II. However, Plaintiffs claims should be dismissed under 12(b)(6) for several additional reasons. First, HXXB lacks the right to sue for constitutional violations in federal court. Second, Plaintiffs have failed to plead a plausible procedural due process claim. For these additional reasons, Plaintiffs' claims should be dismissed.

### A. HXXB lacks the right to sue in federal court.

HXXB's claims should be dismissed because HXXB is a foreign national that lacks the ability to assert constitutional rights in federal court. *See U.S. v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990), *see also Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, *et al.*, 591 U.S. 430, 433–34 (2020). In *Agency for Int'l Dev.*, the Supreme Court held "it is long settled as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." 591 U.S. at 433. The Supreme Court was adamant, restating its position at least 8 more times in an otherwise brief opinion.[3]

Here, HXXB is a wholly foreign corporation. ECF 4 at 5. HXXB has not "come within the territory of the United States and developed substantial connections with this country." *See Verdugo-Urquidez*, 494 U.S. at 271; ECF 4 at 5. As such, it lacks the right to bring constitutional actions in this country's federal courts. Moreover, HXXB's only "connection" with this country is its asserted desire to be a guarantor to its subsidiary company's multi-year commercial leases. *E.g.*, ECF 4 at 16. Courts have held that property ownership in the United States alone without physical presence, residence, or citizenship has not been found to be sufficient to confer the protections of the U.S. Conclusion to foreign nationals. *U.S. v. Approximately $299.873.70 Seized from a Bank of America Account*, 15 F.4th 1332, 1336–40 (11th Cir. 2021) (holding plaintiffs did not

---

[3] "But the Court has not allowed foreign citizens outside the United States…to assert rights under the U. S. Constitution." *Agency for Int'l Dev*, 591 U.S. at 434. "As foreign organizations operating abroad, plaintiffs' foreign affiliates possess no rights under the First Amendment." *Id.* at 436. "In short, plaintiffs' foreign affiliates are foreign organizations, and foreign organizations operating abroad have no First Amendment rights." *Id.* "[Domestic] plaintiffs cannot export their own First Amendment rights to shield foreign organizations from Congress's funding conditions." *Id.* at 438. "Moreover, plaintiffs' proposed line-drawing among foreign organizations would blur a clear rule of American law: Foreign organizations operating abroad do not possess rights under the U. S. Constitution." *Id.* "[T]he Court did not purport to override the longstanding constitutional law principle that foreign organizations operating abroad do not possess constitutional rights." *Id.* at 439. "[B]ecause foreign organizations operating abroad do not possess constitutional rights, those foreign organizations do not have a First Amendment right…." *Id.* "In sum, plaintiffs' foreign affiliates are foreign organizations, and foreign organizations operating abroad possess no rights under the U. S. Constitution." *Id.*

have a 5th Amendment due process right to enter U.S. for purposes of attending forfeiture proceeding); *see also Kadi v. Geithner*, 42 F.Supp.3d 1, 25–43 (D.D.C. 2012) (granting MSJ against foreign national asserting constitutional claims). Here, the present suit does not involve whatever rights might exist with regard to any currently owned properties. It is not even about HXXB's expressed desire to sometime in the future purchase additional properties. It is about HXXB's desire to be a guarantor for a lease. ECF 4 at 16. HXXB can assert no constitutional interest in this regard even if it would be entitled to due process protections if it had current holdings.

### B.  Plaintiffs have not stated a plausible procedural due process claim.

Plaintiffs have not stated a plausible procedural due process claim because they have received all the process they are due. "The Supreme Court long ago established that, when a legislature extinguishes a property interest via legislation that affects a general class of people, the legislative process provides all the process that is due." *McMurtray v. Holladay*, 11 F.3d 499, 504 (5th Cir. 1993) (citing *Bi-Metallic Inv. Co. v. State Bd. Of Equalization*, 239 U.S. 441, 445-46 (1915)). Here, the Legislature determined that multi-year commercial leasehold interests sought by a general class of people like Plaintiffs are automatically void. *See* ECF 4 at 37. As such, Plaintiffs have received all the process they are due and have not plausibly stated a claim otherwise. *See McMurtray*, 11 F.3d at 504.

### CONCLUSION

For these reasons, the Court should grant the Attorney General's Motion to Dismiss and dismiss Plaintiffs' claims in their entirety.

Date: December 30, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

Respectfully submitted,

*/s/ Keith Ingram*

BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
keith.ingram@oag.texas.gov

ALI M. THORBURN
Special Counsel
Texas State Bar No. 24125064
ali.thorburn@oag.texas.gov

LAUREN E. SAEGER
Assistant Attorney General
Texas State Bar No.
lauren.saeger@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Telephone: (512) 463-2100

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on December 30, 2025, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

Laura Elizabeth Schut
HXB USA Research Center
164 World of Tennis Square
Lakeway, TX 78738
281-755-3824
Laura.Schut@HXXB.org

*/s/ Keith Ingram*
BRIAN KEITH INGRAM
Special Counsel

12