# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS

Beijing Daxing Huaxin Xingbang )
Technology Development )
Research Center, )
Individually and on behalf of all )
others similarly situated )
)
And )
)
HXXB USA Research Center, )
Individually and on behalf of all )
others similarly situated, )
)
Plaintiffs, )
)
                v. )   CASE NO.  1:25-cv-1981-RP
)
)
Ken Paxton, )
)
In his official capacity as Attorney General )
for the State of Texas )
)
Defendant. )


**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

CONTENTS                          TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES    ...........................…………….………………... ii-vi

INTRODUCTION............................................................................................................1

STANDARD OF REVIEW..............................................................................................5

ARGUMENT ...................................................................................................................8

    I.    Plaintiffs Have Standing  and Have Sufficiently Pleaded an Article III Injury ............................8

        A. The *Ex parte Young* Exception Applies and Defendant is Not Entitled to Sovereign Immunity...8

        B. S.B. 17 Imposes Immediate Injury by Prohibiting and Voiding Leases ................................. 10

        C. Plaintiff's Injuries are Directly Traceable to the Attorney General.…………………………….12

        D.  HXXB Has Standing …………………………………………………………………………14

    II.    Plaintiffs Have Sufficiently Pleaded a Due Process Claim ....................................................... 15

    III.    The Motion Should be Denied for Public Policy Reasons........................................................... 17

CONCLUSION  ...........................................................................................................  19

# TABLE OF AUTHORITIES

**Cases**

*Twombly v. Iqbal,*
   550 U.S. 544 (2007) ................................................................................................ 1

*Den Norske Stats Oljeselskap As v. Heeremac V.O.F.,*
   241 F.3d 420, 425 (5th Cir. 2001)........................................................................2, 6

*Huang v. Paxton,*
   Civil Action No. 1:25-cv-10509-ADA ...............................................……..3, 8

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375, 377 (1994) ........................................................................................5

*Whole Women's Health v. Jackson,*
   556 F. Supp. 3d 595, 608 (W.D. Tex. 2021)........................................................ 5, 6

*Home Builders Ass'n of Miss., Inc. v. City of Madison,*
   143 F.3d 1006, 1010 (5th Cir. 1998)...................................................................... 5

*Williamson v. Tucker,*
   645 F.2d 404, 412 (5th Cir. 1981) ...................................................................... 6, 7

*Spector v. L Q Motor Inns, Inc.,*
   517 F.2d 278, 281 (5th Cir. 1975)..........................................................................6

*Herpich v. Wallace,*
   430 F.2d 792, 802 (5th Cir. 1970)......................................................................... 6

*Paterson v. Weinberger,*
   644 F.2d 521, 523 (5th Cir. 1981)......................................................................... 6

*Lane v. Halliburton,*
   529 F.3d 548, 557 (5th Cir. 2008)...................................................…....……...6

*Montez v. Dep't of the Navy,*
   392 F.3d 147, 150 (5th Cir. 2004)..................................................…......……..6, 8

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555, 560-61 (1992)................................................................................. 6

*Daigle v. Opelousas Health Care, Inc.,*
   774 F.2d 1344, 1347 (5th Cir. 1985) .................................................................... 6

*Turner v. Pleasant,*
   663 F.3d 770, 775 (5th Cir. 2011)..........................................................................6

*Harrington v. State Farm Fire & Cas. Co.,*
   563 F.3d 141, 147 (5th Cir. 2009) ..........................................................................6

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191, 205 (5th Cir. 2007) ............................................................................. 6

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*,
    369 F.3d 464, 467 (5th Cir. 2004) ............................................................................. 6

*Cuvillier v. Taylor*,
    503 F.3d 397, 401 (5th Cir. 2007) ............................................................................. 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555 (2007) ........................................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ........................................................................................... 7

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333, 338 (5th Cir. 2008) ............................................................................. 7

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285, 288 (5th Cir. 2004) ............................................................................. 7

*Mi Familia Vota v. Ogg*,
    105 F.4th 313, 317 (5th Cir. 2024) ................................................................ 8, 10, 13

*George v. SI Grp., Inc.*,
    36 F.4th 611, 619 (5th Cir. 2022) ........................................................................ 8, 17

*Wang v. Paxon*,
    No. 25-20354 (5th Cir. Dec. 11, 2025) ..................................................................... 8

*Yifan Shen v. Commissioner*,
    158 F.4th 1227, 1238 (11th Cir. 2025) ................................................................ 8, 13

*Haverkamp v. Linthicum*,
    6 F.4th 662, 670 (5th Cir. 2021) ............................................................................... 9

*Speech First, Inc. v. Fenves*,
    979 F.3d 319, 335 (5th Cir. 2020) ........................................................................... 10

*Steffel v. Thompson*,
    415 U.S. 452, 454, 94 S. Ct. 1209, 1213 (1974) ................................................ 10, 11

*The Woodlands Pride, Inc. v. Paxton*,
    157 F.4th 775, 780 (5th Cir. 2025) .......................................................................... 10

*Virginia v. American Booksellers Ass'n*,
    484 U.S. 383, 393 (1988) ...................................................................................... 11, 13

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289, 298 (1979) ......................................................................................... 11

iii

*Doe v. Bolton,*
    410 U.S. 179, 188 (1973)......................................................................................................11

*Animal Legal Def. Fund v. Vaught,*
    8 F.4th 714, 720 (8th Cir. 2021)..........................................................................................11

*Justice v. Hosemann,*
    771 F.3d 285, 291 (5th Cir. 2014)........................................................................................11

*Contender Farms, L.L.P. v. United States Dep't of Agric.,*
    779 F.3d 258, 267 (5th Cir. 2015)........................................................................................11

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118, 129 (2007)......................................................................................................12

*Peng Wang v. Paxton,*
    No. 4:25-cv-03103, 2025 U.S. Dist. LEXIS 159896, at *15 (S.D. Tex. Aug. 18, 2025)....................13

*Cardenas v. Smith,*
    733 F.2d 909, 913–14 (5th Cir. 1984) ..................................................................................14

*Warth v. Seldin,*
    422 U.S. 490 (1975)..............................................................................................................14

*Verlinden B.V. v. Cent. Bank of Nigeria,*
    461 U.S. 480 (1983)..............................................................................................................14

*Servicios Azucareros De Venezuela, C.A. v. John Deere Thibodeaux, Inc.,*
    702 F.3d 794, 804 (5th Cir. 2012).........................................................................................14

*Doe v. Exxon Mobil Corp.,*
    397 U.S. App. D.C. 371 (D.C. Cir. 2011) .............................................................................14

*Japan Line, Ltd. v. Cnty. of L.A.,*
    441 U.S. 434 (1979)..............................................................................................................14

*Constructores Civiles de Centroamerica, S.A. v. Hannah,*
    459 F.2d 1183 (D.C. Cir. 1972).............................................................................................14

*Kukatush Mining Corp. v. SEC,*
    309 F.2d 647 (D.C. Cir. 1962)...............................................................................................14

*Osherow v. York,*
    No. 5:17-CV-483-DAE, 2019 U.S. Dist. LEXIS 200382, at *15 (W.D. Tex. Aug. 5, 2019).............14

*Clinton v. City of New York,*
    524 U.S. 417, 432–33 (1998) ................................................................................................14

*Comer v. Murphy Oil USA,*
    Comer v. Murphy Oil USA, 585 F.3d 855, 859 (5th Cir. 2009) ...........................................14

*First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.,*

703 F.3d 742, 744 (5th Cir. 2012)......................................................................................14

*McMurtray v. Holladay,*
    11 F.3d 499, 500 (5th Cir. 1993)......................................................................................15

*Trump v. Hawaii,*
    585 U.S. 667, 698 (2018).................................................................................................15

*Morissette v. United States,*
    342 U.S. 246, 247 (1952).................................................................................................15

*Dennis v. Higgins,*
    498 U.S. 439, 446 (1991)............................................................................................ 15, 16

*United States v. Robel,*
    389 U.S. 258, 259 (1967).................................................................................................16

*Connecticut v. Doehr,*
    501 U.S. 1, 12 (1991) ......................................................................................................16

*Fuentes v. Shevin,*
    407 U.S. 67, 69 (1972) ....................................................................................................16

*Meyer v. Nebraska,*
    262 U.S. 390, 396 (1923).................................................................................................16

*Simi Inv. Co. v. Harris County,*
    236 F.3d 240, 242 (5th Cir. 2000)....................................................................................16

*Oyama v. California,*
    332 U.S. 633, 647 (1948).................................................................................................16

*Hodge v. Engleman,*
    90 F.4th 840, 842 (5th Cir. 2024).....................................................................................17

*Yick Wo v. Hopkins,*
    118 U.S. 356, 373–74 (1886) ...........................................................................................17

**Constitutional Provisions & Statutes**

TEX. PROP. CODE §§ 5.005 ..................................................................................................1

TEX. PROP. CODE §§ 5.251 ..................................................................................................1

TEX. PROP. CODE §§ 5.253 ..................................................................................1, 2, 10, 13, 16

TEX. PROP. CODE §§ 5.255 ..................................................................................1, 2, 9, 12, 16

TEX. PROP. CODE §§ 5.256 ..................................................................................................2

TEX. PROP. CODE §§ 5.258 ..................................................................................................1

TEX. PROP. CODE §§ 5.259 ..............................................................................................2, 9, 16

U.S. Const. amend. XIV § 1 ........................................................................................15, 16

U.S. Const. art. III, § 1 .............................................................................. 1, 6, 8, 12, 13, 14, 15

**Rules & Regulations**

FED. R. CIV. P. 12(B)(1) ............................................................................................5

FED. R. CIV. P. 12(B)(6) ............................................................................................6

FED. R. CIV. P. 12(D) ...........................................................................................8, 17

Plaintiffs, Beijing Daxing Huaxin Xingbang Technology Development Research Center ("HXXB") and HXXB USA Research Center ("HXXB USA"), hereby submit this Response in Opposition to the Motion to Dismiss ("Motion") filed by Defendant Ken Paxton, in his official capacity as Attorney General of the State of Texas ("Defendant"), and show this Court as follows:

INTRODUCTION

Defendant's Motion is not merely deficient under Rules 12(b)(1) and 12(b)(6); it is a thinly veiled attack on Plaintiffs' national origin or ownership and control, devoid of any legal support or substantiated facts that exist inside the four corners of Plaintiffs' Amended Complaint. The Motion relies on innuendo and unsupported allegations, which can only fairly be described as antagonistic toward Plaintiffs. Far from advancing any legitimate defense, the Motion highlights the very constitutional infirmities Plaintiffs challenge, demonstrating that the Challenged Provisions[1] and the Defendant's enforcement authority pursuant thereto impose discriminatory, suspicion-based restrictions. In stark contrast, Plaintiffs' Amended Complaint presents forty (40) pages of cogent factual allegations, legal authority, and evidentiary support that establish Article III standing and meet the plausibility standard set forth in *Twombly v. Iqbal*, 550 U.S. 544 (2007).

On June 20, Governor Greg Abbott signed into law S.B. 17,[2] which went into effect on September 1, 2025, and which ushered in a sweeping and unprecedented regulatory regime that discriminatorily bars Chinese-domiciled individuals, companies and organizations, and their U.S.-based subsidiaries from owning, purchasing, or leasing, for more than one year, real property in

---

[1] Plaintiffs are specifically challenging S.B. 17, Sections 5.253(2)(A) and (C) and subsection (3) and Section 5.255(e)1, effective September 1, 2025 (collectively, hereinafter referred to as the "Challenged Provisions").
[2] Codified at TEX. PROP. CODE §§ 5.005, 5.251-258.

the State of Texas.[3] On the face of the statute, entering a long-term lease immediately subjects parties subject to the act, like Plaintiffs, to investigation by the Attorney General.[4] Then, all the Attorney General is required to show to establish a violation thereof is that a Chinese-domiciled individual or entity, or their U.S.-based subsidiary, acquired a long-term leasehold interest after the statute's effective date.[5] Parties so targeted are exposed to civil fines[6] and criminal referral[7] without notice or an opportunity to be heard, forced to bear the statutory equivalent of a scarlet letter of a hostile foreign actor.

The Challenged Provisions are grounded not in evidence or any demonstrated governmental need, but on fear, prejudice, and unsubstantiated assumptions about national-security risks. They transform ordinary real estate transactions into prohibited conduct punishable through civil and criminal sanctions based solely on national origin and the State's undefined label of a "hostile foreign actor." The result is a modern-day witch hunt, steeped in stereotypes rather than facts.[8]

Defendant's Motion offers no valid legal or factual challenge to the statute's facial unconstitutionality. It utterly fails to engage with the merits or evidence presented by Plaintiffs.[9] Instead, it repeats unsupported and disparaging allegations, mirrors motions filed in readily

---

[3] *See* §§ 5.253(2)(A), (C)(3).
[4] § 5.256.
[5] *Id.*
[6] § 5.259.
[7] § 5.255(c)(2).
[8] Absent a clearly expressed legislative intent to the contrary, statutory language must ordinarily be regarded as conclusive. *Den Norske Stats Oljeselskap As v. Heeremac V.O.F.*, 241 F.3d 420, 425 (5th Cir. 2001).
[9] *See* specifically, the Introduction and Background sections of Defendant's Motion to Dismiss.

distinguishable cases[10], and anchors its "analysis" entirely on Plaintiffs' national origin, revealing a clear admission of prejudice.

Specifically, Defendant—without *any* investigation or evidence—alleges or accuses Plaintiffs of the following:

1. "To prevent totalitarian governments from circumventing this restriction, SB 17 prohibits certain property purchases and leaseholds by companies under the control of companies or individuals located in those nations." Motion at 1.

2. "Plaintiffs' attempted circumvention of SB 17 is precisely the type of conduct the Texas Legislature lawfully intended to prevent." Motion at 1.

3. "Plaintiffs' nefarious conduct illustrates the need for SB 17, not its unconstitutionality." Motion at 2.

4. "Plaintiffs attempt to manufacture standing by voluntarily seeking out leases they know they will not sign while SB 17 is in effect." Motion at 5.

Defendant thus alleges, external to the Amended Complaint, and without *any* evidence or investigation, that: (1) Plaintiffs are instruments of the Chinese Government and the Chinese Communist Party ("CCP"), and hence, hostile foreign actors (i.e. enemies of the State); (2) Plaintiffs attempt to enter the State's real estate market was a mere ploy to confer standing; and (3) S.B. 17 was especially designed to be enforced against Plaintiffs.[11]

These allegations are false and directly controverted by the Amended Complaint. Specifically, the Motion entirely disregards consideration of the following facts in the Amended Complaint, which this Court must accept as true:

1. The Chairman of the Board of HXXB (Yu Zhang) is not, nor has he ever been an employee, contractor, or agent of the Chinese government. Zhang Decl. at ¶ 6. He has also never been a member of the CCP. *Id.* at ¶ 7.

---

[10] Compare Defendant's Motion in the present matter against his motion to dismiss filed in *Huang v. Paxton*, Civil Action No. 1:25-cv-10509-ADA.

[11] As discussed more in detail, *infra*, not only are these allegations false, they have also inappropriately been incorporated into this Motion and prove fatal to it on multiple grounds.

2. HXXB is not a contractor or agent of the Chinese government. HXXB is also not a contractor or agent of the CCP. *Id.* at ¶ 12. Nor is it on the "entity list," which is a U.S. government export-control blacklist administered by the Bureau of Industry and Security ("BIS") within the Department of Commerce. Amended Compl. at ¶ 26.[12]

3. HXXB has a humanistic, international outlook. Zhang Decl. at ¶¶ 15-16. HXXB is organized as a non-profit social organization ("PRNEU") and is, thus, legally required to be free from governmental assets and influence in accordance with Chinese law. *Id.* at ¶ 10.

4. HXXB is not listed, nor has it ever been listed, on the Department of Defense's list entitled: "Entities Identified as Chinese Military Companies Operating in the United States…." *Id.* at ¶ 13.

5. HXXB's mission is to democratize semiconductor technology and drive innovation in a manner that benefits the public good, which is consistent with and complimentary to, and in no way adversarial to, the United States ("U.S.") or the State of Texas. *Id.* at ¶¶ 15-16.

6. HXXB USA was organized to comply with federal law and policy, not to circumvent S.B. 17. *Id.* at ¶¶ 48-53; *see also* Amended Compl. at ¶¶ 60-66.

7. The Attorney General has not and cannot point to *any* state or national security threat presented by Plaintiffs. Amended Compl. at ¶ 56.

8. Plaintiffs seek to enter the State's real estate market solely because Austin, Texas is a nationally recognized[13] semiconductor hub, not because they want to circumvent S.B. 17. Zhang Decl. at ¶¶ 21-26; 39. Their motivation is driven by an ambition to partner with individuals and entities in the State of Texas in furtherance of advancing human technology, not to circumvent S.B. 17. *Id.* at ¶¶ 28-34.

9. Plaintiffs painstakingly negotiated leases, and spent significant time and resources in the process, in furtherance of their mission, not as a surreptitious strategy to confer standing. *Id.* at ¶ 45. Plaintiffs had every intention of executing these leases and would have done so already but for the Challenged Provisions. Amended Compl. at ¶ 67. They did not spend significant time and resources negotiating leases, knowing all along they would not execute them, to merely confer standing.

---

[12] *See also* Supplement 4 to BIS regulation part 744, *Control Policy: End-user and End-use Based*. https://www.bis.gov/regulations/ear/744#section-744.16.

[13] Plaintiffs were motivated to enter the State of Texas real estate market, and began their search in earnest, because of documents such of the IBIS*World* report, which is dated April 2025, well before S.B. 17 became effective. Amended Compl. at ¶ 41; *see also* Ex. E-1 to Plaintiffs' Amended Complaint.

Not all People of Color are criminals. Not all immigrants are undocumented. And not all Chinese-domiciled nationals and entities are members or conduits of the Chinese government or the CCP, tasked with advancing the CCP's ambitions abroad. Yet Defendant's Motion—without evidence, authority, or support in the pleadings—conflates Plaintiffs with the CCP based solely on national origin. That rhetoric does not undermine Plaintiffs' claims; it undermines the Motion itself. By resorting to speculative rhetoric untethered from any factual record, Defendant reveals an absence of neutrality and an impermissible reliance on national-origin stereotypes. Such conjecture is not only improper at the Rule 12 stage, where motive and intent cannot be adjudicated, but it further corroborates Plaintiffs' allegations that the Challenged Provisions are unconstitutional as they are driven by discriminatory animus and incapable of neutral enforcement. Far from justifying dismissal, the Motion reinforces the constitutional infirmities of the statute and confirms that it cannot be administered in a manner consistent with the U.S. Constitution.

STANDARD OF REVIEW

A.  <u>Rule 12(b)(1) Standard</u>.

Under Rule 12(b)(1), a party may move to dismiss for lack of subject-matter jurisdiction.[14] A Rule 12(b)(1) motion challenges the Court's constitutional or statutory authority to adjudicate the case.[15] The party invoking federal jurisdiction bears the burden of establishing it.[16]

---

[14] FED. R. CIV. P. 12(b)(1); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Whole Women's Health v. Jackson*, 556 F. Supp. 3d 595, 608 (W.D. Tex. 2021) (Pitman, J.)**.**
[15] *Id.*; *see also Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).
[16] *Kokkonen*, 511 U.S. at 377.

In resolving a Rule 12(b)(1) motion, the court must consider the allegations in the plaintiff's complaint as true.[17] The court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed jurisdictional facts.[18]

Where a motion challenges Article III standing, the court focuses on whether the plaintiff has suffered a concrete injury.[19] Where "the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case" under either Rule 12(b)(6) or Rule 56.[20]

B.  Rule 12(b)(6) Standard.

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[21] "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'"[22]

In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[23] "To survive a Rule 12(b)(6) motion to dismiss, a

---

[17] *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) (citing *Spector v. L Q Motor Inns, Inc.*, 517 F.2d 278, 281 (5th Cir. 1975); *Herpich v. Wallace*, 430 F.2d 792, 802 (5th Cir. 1970)); *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

[18] *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004); *Den Norske*, 241 F.3d at 424; *Whole Women's Health*, 556 F. Supp. 3d at 609 (citing *Lane v. Halliburton,* 529 F.3d 548, 557 (5th Cir. 2008) (W.D. Tex. 2021)).

[19] *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

[20] *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004) (citing *Williamson*, 645 F.2d at 415; *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1347 (5th Cir. 1985)).

[21] FED. R. CIV. P. 12(b)(6).

[22] *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

[23] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[24] That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[25]

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[26] "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[27]

A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[28] A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim."[29] But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint.[30]

Where a defendant's challenge relies on factual assertions outside the pleadings, the proper course is to deny the motion to dismiss under Rule 12(b)(1) or 12(b)(6) and, if the defendant wishes, permit a motion for summary judgment under Rule 56. This ensures that any disputed facts

---

[24] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[25] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).
[26] *Id.*
[27] *Id.*
[28] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).
[29] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).
[30] *Dorsey*, 540 F.3d at 338.

are addressed with the procedural safeguards required by due process, including notice and an opportunity to present evidence. Unsupported allegations or characterizations cannot be considered in determining jurisdiction or the sufficiency of the pleadings.[31]

ARGUMENT

I.     **Plaintiffs Have Standing[32] and Have Sufficiently Pleaded an Article III Injury**.

A. The *Ex parte Young* Exception Applies and Defendant is Not Entitled to Sovereign Immunity.

Defendant is not entitled to sovereign immunity and the Motion's reliance on *Mi Familia Vota v. Ogg*, 105 F.4th 313, 317 (5th Cir. 2024) is misplaced. In that matter, the Fifth Circuit

---

[31] *See* FED. R. CIV. P. 12(d); *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004); *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

[32] Plaintiffs are aware the Court in *Huang et al. v. Paxton*, Case No. 1:25-cv-01509-ADA, currently pending in the Southern District of Texas and currently on appeal to the Fifth Circuit Court of Appeals, recently issued an Order denying those plaintiffs' Motion for Preliminary Injunction and granting in part defendant's Motion to Dismiss—principally on the basis that the plaintiffs were foreign-domiciled nationals who lacked standing to invoke constitutional rights and remedies. While Plaintiffs believe the Order was erroneously decided and are confident it will be reversed on appeal, *Huang* is distinguishable from the present matter. First and foremost, Plaintiff HXXB USA is a duly incorporated U.S.-based non-profit organization—it is not a foreign entity. In his order Judge Albright found it particularly compelling that plaintiffs "…were not present in the United States. If they travel to Texas to purchase or manage property, they will not be traveling here from Nebraska." In the instant matter, Plaintiff HXXB USA has not traveled from Nebraska to actively lease property in the State of Texas, but it has traveled from Michigan, the state within the union in which HXXB USA is incorporated. Plaintiffs are also aware that the Fifth Circuit recently issued a decision upholding the lower court's order granting Defendant's motion to dismiss a lawsuit filed in the Southern District of Texas challenging S.B. 17. *See Wang v. Paxon*, No. 25-20354 (5th Cir. Dec. 11, 2025). The case is readily distinguishable in that the Court's holding was exclusively predicated upon its finding that S.B. 17 did not apply to plaintiffs as they were not domiciled in China. Finally, *Yifan Shen v. Commissioner*, 158 F.4th 1227, 1238 (11th Cir. 2025) is also distinguishable as the court found the plaintiffs did not intend to engage in the purchase restriction in a similar Florida statute, thus, lacked standing. The Court did not address the substance of the purchase restriction but upheld the registration and affidavit requirements in the statute as they did not "prohibit or otherwise restrict anyone from completing transactions that the federal foreign investment review regime would otherwise allow."

concluded that the district attorney had an insufficient connection with the enforcement of the law being challenged as required by the *Ex parte Young* doctrine. Specifically, the Court found that the *Ex parte Young* exception to sovereign immunity applies where, as in the present matter, individuals, as officers of the state, are clothed with some duty in regard to the enforcement of the challenged law.[33] No such statutory duty existed in *Ogg* that could be traced to the district attorney other than a general duty to prosecute, which the Court found is insufficient to invoke the *Ex parte Young* exception to sovereign immunity. In contrast, the Fifth Circuit confirmed that "[t]o be amenable to suit under [*Ex parte Young*], the state actor must both possess the authority to enforce the challenged law and have a sufficient connection [to] the enforcement of the challenged act."[34]

Here in contrast, S.B. 17 gives exclusive enforcement authority to the Attorney General and compels (i.e. duty-binds) him or her to "establish procedures to examine a purchase or acquisition of an interest in real property and determine whether an investigation of a possible violation of this subchapter is warranted." § 5.255. Where the Attorney General finds a violation, the statute mandates that he or she investigate the purchase or acquisition of a real property interest to determine whether a violation has occurred. § 5.255(b). If the Attorney General finds a violation has occurred (which as mentioned *supra*, only requires a showing that a Chinese-domiciled national entity, or its U.S.-based subsidiary acquired a prohibited property interest, the offending party is immediately subject to criminal referral and civil penalty. §§ 5.255(c)(2); 5.259. In addition, if the Attorney General finds a violation, leasehold interests are automatically voided. § 5.255(e). These affirmative duties exclusively reserved for the Attorney General under S.B. 17 are

---

[33] *Id.* at 325.
[34] *Id.* at 328 (quoting *Haverkamp v. Linthicum*, 6 F.4th 662, 670 (5th Cir. 2021)).

a far cry from the "general duty" to prosecute the Fifth Circuit held was insufficient to invoke the *Ex parte Young* exception.

Further, and equally as important, the Fifth Circuit stated in *Ogg* that "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict… activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence."[35]   Hence, that the Attorney General has not yet enforced the Challenged Provisions is immaterial. Plaintiffs would submit, however, that the Motion's assertions that (1) Plaintiffs are hostile foreign actors tied to the CCP who are intentionally and nefariously subverting S.B. 17; and (2) Plaintiffs alleged nefarious conduct "illustrates the need" for S.B. 17, show that a future threat of enforcement against Plaintiffs, and those similarly situated, is substantial.

Thus, *Ogg* is plainly distinguishable from the present matter and supports Plaintiffs' claim that the *Ex parte Young* exception here applies.  Federal declaratory relief is not precluded when no state prosecution is pending where a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state statute, whether an attack is made on the constitutionality of the statute on its face or as applied.[36]

B.  <u>S.B. 17 Imposes Immediate Injury by Prohibiting and Voiding Leases</u>.

This is a pre-enforcement case. Plaintiffs need not wait for prosecution or penalties to accrue because the statute is already operating to (1) designate Plaintiffs as "hostile foreign actors" based solely on HXXB's Chinese domicile and HXXB USA's ownership structure, and (2) prohibit Plaintiffs from executing long-term leases. S.B. 17 Section 1; §§ 5.253(2)(A), (C)(3). The

---

[35] *Ogg*, 105 F.4th at 329 (citing *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020)).
[36] *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 454, 94 S. Ct. 1209, 1213 (1974); *The Woodlands Pride, Inc. v. Paxton*, 157 F.4th 775, 780 (5th Cir. 2025) ("The Attorney General has the particular duty to enforce—that is, to compel or constrain compliance with—Section One of S.B. 12.").

injury is therefore direct and immediate. Plaintiffs' leasing plans are concrete, not speculative: they actively pursued and negotiated long-term leases and would have executed them but for the Challenged Provisions. Zhang Decl. at ¶¶ 45–46; Amended Compl. at ¶ 67. Because the statute itself makes execution of a long-term lease unlawful—and Defendant has already declared, without evidence or investigation, that Plaintiffs are CCP-affiliated hostile foreign actors attempting to evade S.B. 17—the threat of investigation and enforcement is real and imminent. *See* Motion at pp. 1–2.

The statutory scheme leaves Plaintiffs no lawful path forward. They face a Hobson's choice: execute a prohibited lease and invite enforcement or comply with the statute and abandon leasing altogether. That choice itself constitutes injury. Courts have long recognized that a plaintiff need not subject itself to enforcement to establish standing where a statute coerces compliance through credible threats of enforcement. A plaintiff bringing a pre-enforcement facial challenge need only show "an actual and well-founded fear that the law will be enforced against" it.[37] When a plaintiff intends to engage in conduct affected with a constitutional interest but proscribed by statute, and faces a credible threat of enforcement, it "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."[38]

A harm arises even absent prosecution, because "[t]he alleged danger of the statute is, in large measure, one of [coerced compliance]."[39] Nor is a formal threat required; the question is whether Plaintiffs' fear of enforcement is objectively reasonable and chills their conduct.[40]

---

[37] *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988).
[38] *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)); *see also Steffel*, 415 U.S. at 459.
[39] *American Booksellers*, 484 U.S. at 393.
[40] *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 720 (8th Cir. 2021); *see also Justice v. Hosemann*, 771 F.3d 285, 291 (5th Cir. 2014); *Contender Farms, L.L.P. v. United States Dep't of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015).

Compliance with the statute does not defeat jurisdiction. "[T]he plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction."[41] The Supreme Court does not require a plaintiff to "bet the farm" by engaging in prohibited conduct as a prerequisite to judicial review.[42]

Defendant's standing argument fails as a matter of law. It would require Plaintiffs either to violate the statute to preserve standing or to comply and lose access to judicial review. That result is foreclosed by Supreme Court and Fifth Circuit precedent.[43] The absence of a pending enforcement action brought by Defendant is immaterial. The Challenged Provisions have already foreclosed Plaintiffs' ability to execute long-term leases and Defendant has identified Plaintiffs as among the statute's intended targets. On these facts, Article III standing is inevitable.

C.  Plaintiffs' Injuries are Directly Traceable to the Attorney General.

Defendant's contention that Plaintiffs' injuries are not traceable to the Attorney General fails. As noted above, *only* the Attorney General possesses enforcement authority under S.B. 17. § 5.255. Although the Challenged Provisions facially prohibit Plaintiffs from entering a lease, a lease is voided *only when the Attorney General establishes a violation*. §§ 5.255(c), (e). And once such a violation is established—something that requires nothing more than a showing that a Chinese-domiciled national, entity, or their U.S.-based subsidiary entered a long-term lease—the statute mandates divestment automatically, without any further enforcement action. § 5.255(e).

That automatic divestment is dispositive of Plaintiffs' constitutional challenge. At no point do the Challenged Provisions, or any provision in S.B. 17 for that matter, afford Plaintiffs notice or an opportunity to be heard before their lease is voided; it is enough that an entity is Chinese

---

[41] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007).
[42] *Id.*
[43] *See supra*.

domiciled or is owned and controlled Chinese-domiciled national or entity. §§ 5.253(2)(A), (C)(3). Defendant cannot escape traceability by oscillating between theories. Either the statute voids leases automatically—creating an imminent, cognizable injury—or the Attorney General must first establish a violation, which likewise creates an imminent, cognizable injury. In either case, Article III standing exists.[44]

The Motion's assertion that Plaintiffs' claims fail because the Attorney General has not yet acted is equally meritless. As explained, *supra*, the absence of pending enforcement does not defeat standing, particularly where, as here, the Challenged Provisions have been in effect only since September 1, 2025.[45] Nor must Plaintiffs demonstrate "some scintilla" of affirmative enforcement action. Defendant has already supplied it—by accusing Plaintiffs of being hostile foreign actors seeking to subvert S.B. 17 and thus identifying them as the statute's intended targets. Motion at 1–2. That alone clears the exceedingly low "scintilla" threshold.[46] Equally as important, "when a plaintiff challenges a law soon after it was enacted and the state vigorously defends the law in court, federal appellate courts can infer a credible threat of prosecution exists."[47]

---

[44] *See, e.g.*, *American Booksellers*, 484 U.S. at 393.
[45]45 *See Ogg*, 105 F.4th at 329.
[46] *Contrast with* Defendant's motion to dismiss in *Peng Wang v. Paxton*, No. 4:25-cv-03103, 2025 U.S. Dist. LEXIS 159896, at *15 (S.D. Tex. Aug. 18, 2025) where Defendant's standing challenge was predicated upon the following commitment: "There is no state interest in preventing persons who are legally living in Texas as their true home and who possess the desire to continue living and working in Texas in the future from purchasing or leasing real estate. These persons are no threat to the security of Texas or Texans. They are welcome to settle here. Nothing in SB 17 is to the contrary." It is evident from Defendant's Motion that Plaintiffs are not similarly welcome to settle in Texas and are the very category of parties the legislature envisaged enforcement against in passing S.B. 17.
[47] *Yifan Shen*, 158 F.4th at 1238.

D.  HXXB Has Standing.

For Article III purposes, HXXB's foreign domicile is irrelevant to the existence of its injury. "It is the injury and not the party that determines Article III standing."[48] Regardless of whether HXXB is Chinese- or U.S.-domiciled, it possesses a concrete stake that will be directly affected by the outcome of this litigation.[49] Article III permits foreign plaintiffs who suffer concrete injuries to invoke the jurisdiction of U.S. courts.[50]

Injuries to traditional common-law interests—property and contract—have "always been sufficient for standing purposes."[51] Probable economic injury resulting from government action likewise constitutes a concrete injury.[52] Fifth Circuit precedent further confirms that foreign entities may invoke the protections of the Due Process Clause.[53]

HXXB is not a passive foreign observer with a generalized grievance. It entered the U.S. market by establishing, in compliance with federal regulations and policy, a U.S.-based subsidiary and, through that entity, sought to participate in the Texas real estate market serving as a guarantor. The Challenged Provisions immediately bar Plaintiffs from entering a lease and, as the Motion clearly shows, subject them to an imminent threat of enforcement, thereby directly impairing

---

[48] *Cardenas v. Smith*, 733 F.2d 909, 913–14 (5th Cir. 1984) (citing *Warth v. Seldin*, 422 U.S. 490 (1975)).

[49] *Id.* (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983)).

[50] *See Servicios Azucareros De Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 804 (5th Cir. 2012) (citing *Doe v. Exxon Mobil Corp.*, 397 U.S. App. D.C. 371 (D.C. Cir. 2011)); *see also Japan Line, Ltd. v. Cnty. of L.A.*, 441 U.S. 434 (1979); *Cardenas*, 733 F.2d at 913–14; *Constructores Civiles de Centroamerica, S.A. v. Hannah*, 459 F.2d 1183 (D.C. Cir. 1972); *Kukatush Mining Corp. v. SEC*, 309 F.2d 647 (D.C. Cir. 1962).

[51] *Servicios Azucareros*, 702 F.3d at 800; *see also Cardenas*, 733 F.2d at 913–14; *Osherow v. York*, No. 5:17-CV-483-DAE, 2019 U.S. Dist. LEXIS 200382, at *15 (W.D. Tex. Aug. 5, 2019).

[52] *Clinton v. City of New York*, 524 U.S. 417, 432–33 (1998); *Comer v. Murphy Oil USA*, 585 F.3d 855, 859 (5th Cir. 2009) (An indirect causal relationship will suffice to establish the traceablity element to standing, "so long as there is a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant.").

[53] *See First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 744 (5th Cir. 2012).

14

HXXB's contractual and economic interests. HXXB is therefore "directly affected by the laws and practices against which [its] complaints are directed."[54] These injuries are traceable to Defendant and redressable by declaratory and injunctive relief, which is sufficient to establish Article III standing.

## II.    **Plaintiffs Have Sufficiently Pleaded a Due Process Claim**.

Defendant's contention that S.B. 17's legislative enactment alone defeats Plaintiffs' Due Process claim is wrong as a matter of law. Legislative action has long been a valid predicate for Due Process challenges involving the deprivation of property interests.[55]  Were it otherwise, procedural due process would be a nullity, as every such claim necessarily challenges government action. Texas cannot extinguish a core constitutional protection merely by passing a statute—such a rule would contradict the plain text of the Fourteenth Amendment. *McMurtray v. Holladay*, 11 F.3d 499, 500 (5th Cir. 1993) does not support Defendant's position. That case concerned a legislative change to a public benefit entitlement that was universally applicable, whether to a U.S. citizen or a Chinese national; it did not involve the stigmatization or deprivation of property based on national origin. It is therefore inapposite.

Here, the Challenged Provisions categorically bar Plaintiffs from executing long-term leases based on an unsubstantiated assertion that they pose a State and national security threat—

---

[54] *Trump v. Hawaii*, 585 U.S. 667, 698 (2018); *see also* Amended Compl. at ¶¶ 67-71; Zhang Decl. at ¶¶ 54-61.

[55] *Morissette v. United States*, 342 U.S. 246, 247 (1952) (For invasions of rights of property, the penalty is high and, when a sufficient amount is involved, the infamy is that of a felony, which is as bad a word as you can give to man or thing.); *Dennis v. Higgins*, 498 U.S. 439, 446 (1991) ("We further conclude[ ] that 'the dichotomy between personal liberties and property rights is a false one. . . . The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a 'personal' right, whether the 'property' in question be a welfare check, a home, or a savings account.'").

solely because HXXB is Chinese-domiciled and HXXB USA is owned and controlled by HXXB.[56] This deprivation occurs without notice or an opportunity to be heard. The statute "quite literally establish[es] guilt by association alone, without any need to establish that an individual's association poses the threat feared by the government."[57] State action that prohibits an entire class from entering lawful lease agreements—without individualized determinations, hearings, or a chance to rebut—squarely violates procedural due process.[58]

The statute's defects deepen further. The Challenged Provisions empower the Attorney General to investigate, impose civil penalties, and refer for criminal prosecution violations defined entirely by Plaintiffs' national origin—again, without notice or hearing.[59] This regime replaces adjudication with constitutionally incurable assumptions, a framework the Supreme Court and the Fifth Circuit have repeatedly condemned as violative of Due Process.[60]

---

[56] S.B. 17 Section 1, §§ 5.253(2)(A), (C)(3).

[57] *United States v. Robel*, 389 U.S. 258, 259 (1967)

[58] *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) ("[E]ven the temporary or partial impairments to property rights…are sufficient to merit due process protection.").

[59] §§ 5.255(c)(2); 5.259.

[60] *See Fuentes v. Shevin*, 407 U.S. 67, 69 (1972) (Whatever its form, opportunity for that hearing must be provided before a deprivation of a property interest.); *Meyer v. Nebraska*, 262 U.S. 390, 396 (1923) ("The liberty guaranteed under U.S. Const. amend. XIV denotes not merely freedom from bodily restraint but also the right of the individual to contract…and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men."); *Simi Inv. Co. v. Harris County*, 236 F.3d 240, 242 (5th Cir. 2000) (County had abused its governmental power and violated plaintiff's substantive due process rights where the basis for infringing on the plaintiff's property rights was arbitrary and capricious); *see also Dennis*, 498 U.S. at 446 ("The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a 'personal' right, whether the 'property' in question be a welfare check, a home, or a savings account."); *Oyama v. California*, 332 U.S. 633, 647 (1948) ("[T]his case presents a conflict between the State's right to formulate a policy of landholding within its bounds and the right of American citizens to own land anywhere in the United States. When these two rights clash, the rights of a citizen may not be subordinated merely because of his father's country of origin.").

16

Finally, Defendant's Motion compounds these constitutional defects by accusing Plaintiffs of being an arm of the CCP and of engaging in "nefarious" conduct, without any evidentiary support or procedural safeguards. Motion at 1–2, 5. Such allegations—resting on facts outside the pleadings, including supposed motives or political affiliations—cannot be resolved on a motion to dismiss. The proper course is denial of the motion under Rule 12(b)(1) or 12(b)(6), with any factual disputes addressed, if at all, through summary judgment.[61] This is especially true where, as here, the Challenged Provisions are arguably enforced with an "evil eye and an unequal hand."[62] Plaintiffs' Due Process claim therefore survives Defendant's challenge.

### III.    **The Motion Should be Denied for Public Policy Reasons**.

While the Motion does not substantively address the substance of Plaintiffs' Supremacy Clause[63] cause of action, it is worth emphasizing that the Challenged Provisions have real-world consequences.

In the wake of the unprecedented U.S. military operation that resulted in the capture of Venezuelan President Nicolás Maduro and his transfer to U.S. federal court—a move that has triggered widespread international debate, to include amongst the government of China and its foreign policy delegates and their U.S. counterparts, and an emergency session at the United Nations—there is a vivid demonstration of why decisions about foreign policy, including the identification of state adversaries and determinations affecting international relations, must be

---

[61] FED. R. CIV. P. 12(d); *Williamson*, 645 F.2d at 413–16; *SI Group, Inc.*, 36 F.4th at 619; *Hodge v. Engleman*, 90 F.4th 840, 842 (5th Cir. 2024).
[62] *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886).
[63] See Amended Compl. at ¶¶ 26-27; 108-128.

exercises of plenary presidential authority rather than actions taken by individual states or non-federal actors.[64]

Under the Constitution, foreign affairs and national security decisions are entrusted to the Executive because they require coherent, unified direction, consistent engagement with allies and adversaries, and the discretion to manage sensitive diplomatic and treaty obligations—functions that individual states lack the authority, expertise, or legal standing to perform. Allowing state entities to declare enemies of the state or articulate independent foreign policy positions would fracture national strategy, risk international reprisals, and undermine the President's capacity to speak with one voice on matters that touch on war, peace, and complex great-power relations, particularly as U.S. actions reverberate through relationships with global powers like China.[65]

Publicly labeling a party as a CCP affiliate and a national security threat with nefarious intentions—without evidence or investigation—risks unintended foreign policy consequences beyond this case. State action with such potential geopolitical implications warrants careful judicial scrutiny. Plaintiffs must be afforded an opportunity to respond to these allegations, not

---

[64] Jennifer Jacobs, Joe Walsh, James LaPorta, Tucker Reals, *Trump says U.S. is "in charge" of Venezuela, Maduro jailed in New York after U.S. military operation*, **CBS NEWS**, Jan. 5, 2026, https://www.cbsnews.com/live-updates/venezuela-us-military-strikes-maduro-trump/?utm;   Joe Cash, *US capture of Maduro tests limits of China's diplomatic push*, **Reuters**, Jan. 6, 2026, https://www.reuters.com/world/china/china-says-it-cannot-accept-countries-acting-world-judge-after-us-captures-2026-01-05/?utm; David Smith, US foes and allies denounce Trump's 'crime of aggression' in Venezuela at UN meeting, The Guardian, Jan. 5, 2026. Plaintiffs request that the Court take judicial notice of these news articles pursuant to Rule 201 as these articles are meant to show what is publicly reported or known, not to prove the truth of the matters asserted therein.

[65] Inma Bonet, *Maduro's downfall puts China's relationship with Venezuela to the test*, **El Pais**, Jan. 4, 2026, https://english.elpais.com/international/2026-01-04/maduros-downfall-puts-chinas-relationship-with-venezuela-to-the-test.html. Plaintiffs request that the Court take judicial notice of this news article pursuant to Rule 201 as this article is meant to show what is publicly reported or known, not to prove the truth of the matters asserted therein.

only to ensure fundamental fairness, but to avoid policy outcomes that extend far beyond the matters properly before the Court.

CONCLUSION

Plaintiffs are not hostile foreign actors, extensions of the CCP, security threats, or participants in nefarious conduct. They are non-profit organizations committed to advancing semiconductor technology in a transparent and collaborative manner for everyone's mutual benefit. Their mission is to expand access to technological innovation—particularly for marginalized communities—through lawful partnerships with entities in the State of Texas. Defendant's effort to impute illicit motive and to categorize Plaintiffs as entities unwelcome to do business in Texas is unsupported by fact or law and amounts to little more than tilting at windmills. For these reasons, and as a matter of legal, procedural, and public policy concerns, the Motion should be denied and the Challenged Provisions invalidated so that justice can be done.

 DATED: January 14, 2026

Respectfully submitted,

/s/ Laura E. Schut
Laura E. Schut
Tx. Bar. No. 24161306
*Attorney in charge for Plaintiffs*
HXXB USA Research Center
281-755-3824
Laura.Schut@HXXB.org

19

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on <u>January 14, 2026,</u> a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

BRIAN KEITH INGRAM
Special Counsel
Texas State Bar No. 00787746
keith.ingram@oag.texas.gov

ALI M. THORBURN
Special Counsel
Texas State Bar No. 24125064
ali.thorburn@oag.texas.gov

LAUREN E. SAEGER
Assistant Attorney General
Texas State Bar No.
lauren.saeger@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Telephone: (512) 463-2100