**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | |
|---|---|
| Beijing Daxing Huaxin Xingbang<br>Technology Development<br>Research Center,<br>Individually and on behalf of all<br>others similarly situated<br><br>And<br><br>HXXB USA Research Center,<br>Individually and on behalf of all<br>others similarly situated,<br><br>Plaintiffs,<br><br>          v.<br><br>Ken Paxton,<br><br>In his official capacity as Attorney General<br>for the State of Texas<br><br>Defendant. | CASE NO.   1:25-cv-1981-RP |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INDEX OF EXHIBITS ......................................................................................................... viii

INTRODUCTION ................................................................................................................... 1

STATEMENT OF FACTS ...................................................................................................... 2

    A.   Challenged Provisions. ............................................................................................... 2

    B.   The Alleged Motivation behind S.B. 17 has no Articulated Application to Plaintiffs. ...... 4

    C.   Defendant's Proposed Rules. ...................................................................................... 6

    D.   Federal Objective in Attracting Inbound Chinese Investment Impeded by S.B. 17. .......... 7

ARGUMENT ......................................................................................................................... 8

    A.   Plaintiffs are Likely to Succeed on the Merits of their Claims. .......................................... 8

        a.   Federal Immigration and Investment Laws Preempt the Challenged Provisions Under the Supremacy Clause. ....................................................................................... 9

        b.   The Challenged Provisions Violate the Foreign Commerce Clause. ........................... 14

        c.   The Challenged Provisions Violate the Due Process Clause. ...................................... 15

    B.   Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm. ......................................... 18

    C.   Granting the Requested Injunction Outweighs the Benefits of Denying the Injunction and Granting the Injunction is in the Public's Interest. ................................................................. 19

CONCLUSION ..................................................................................................................... 20

Certificate of Service .......................................................................................................... 22

Certificate of Conference .................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Peng Wang v. Paxton,*
No. 4:25-cv-03103, 2025 U.S. Dist. LEXIS 159896 (S.D. Tex. Aug. 18, 2025) ………….……… 2

*Examining Bd. v. Flores de Otero,*
426 U.S. 572 (1976) ........................................................................................... 3

*Takahashi v. Fish & Game Comm'n,*
334 U.S. 410 (1948) ………………………………………………….. 4, 14, 15

*Truax v. Raich,*
239 U.S. 33 (1915) ………………………………………………………….. 4

*Sei Fujii v. State,*
242 P.2d 617 (Cal. 1952) …………………………………………….……… 4, 16

*Elrod v. Burns,*
427 U.S. 347 (1976) ……………………………………………………… 5

*Movsesian v. Victoria Versicherung AG,*
670 F.3d 1067 (9th Cir. 2012) ………………………………………………6, 12

*Book People, Inc. v. Wong,*
91 F.4th 318 (5th Cir. 2024) ..............................................…… 8, 19

*Winter v. Nat. Res. Def. Council, Inc.,*
555 U.S. 7 (2008) ..........................................................……8

*Opulent Life Church v. City of Holly Springs,*
697 F.3d 279 (5th Cir. 2012) …………………………………………… 8, 18

*Barber v. Bryant,*
860 F.3d 345 (5th Cir. 2017) ………………………………………….. 8

*Tesfamichael v. Gonzales,*
411 F.3d 169 (5th Cir. 2005) ………………………………………….. 8

*Byrum v. Landreth,*
566 F.3d 442 (5th Cir. 2009) ………………………………………….. 8

*Zyla Life Scis., L.L.C. v. Wells Pharma of Hous., L.L.C.,*
134 F.4th 326 (5th Cir. 2025) …………………………………… 9, 11, 12

*Ralls Corp. v. Committee on Foreign Investment in the United States,*
758 F.3d 296 (D.C. Cir. 2014) ………………………………………… 9

*Arizona v. United States,*
567 U.S. 387 (2012) …………………………………………...…… .11, 13, 14

*Zschernig v. Miller,*
389 U.S. 429 (1968) ………………………………………………… 11, 12, 14, 20

*American Ins. Ass'n v. Garamendi,*
539 U.S. 396 (2003) ......................................................................... 11, 13

*Odebrecht Constr. v. Sec'y, Fla. DOT,*
715 F.3d 1268 (11th Cir. 2013) ............................................................. 11

*Hines v. Davidowitz,*
312 U.S. 52, 63 (1941) ................................................................... 11, 12

*United States v. Pink,*
315 U.S. 203 (1942) ............................................................................ 11

*United States v. Belmont,*
301 U.S. 324 (1937) ............................................................................ 11

*Ziglar v. Abbasi,*
582 U.S. 120 (2017) ............................................................................ 11

*Crosby v. National Foreign Trade Council,*
530 U.S. 363 (2000) ................................................................... 12, 13, 14

*First National City Bank v. Banco Nacional de Cuba,*
406 U.S. 759 (1972) ............................................................................ 13

*United States v. Curtiss-Wright Export Corp.,*
299 U.S. 304 (1936) ............................................................................ 13

*Japan Line, Ltd. v. County of Los Angeles,*
441 U.S. 434 (1979) ................................................................... 13, 14, 15

*Oyama v. California,*
332 U.S. 633, 635 (1948) ............................................................. 13, 17, 18

*United States v. South Carolina,*
720 F.3d 518 (4th Cir. 2013) ................................................................ 13

*Bd. of Trs. of Univ. of Ill. v. United States,*
289 U.S. 48 (1933) ............................................................................. 14

*Camps Newfound/Owatonna, Inc. v. Town of Harrison,*
520 U.S. 564 (1997) ............................................................................ 14

*Barclays Bank Plc v. Franchise Tax Bd.,*
512 U.S. 298 (1994) ............................................................................ 14

*Piazza's Seafood World, LLC v. Odom,*
448 F.3d 744 (5th Cir. 2006) ................................................................ 14

*Kraft Gen. Foods, Inc. v. Iowa Dept. of Revenue and Finance,*
505 U.S. 71(1992) .............................................................................. 14

*Or. Waste Sys. v. Dep't of Envtl. Quality,*
511 U.S. 93 (1994) ............................................................................. 15

*Dennis v. Higgins,*
498 U.S. 439 (1991) ............................................................................ 15

iii

*New Energy Co. v. Limbach,*
  486 U.S. 269 (1988) ………………………………………………………… 15

*Chemical Waste Mgmt., Inc. v. Hunt,*
  504 U.S. 334 (1992) ………………………………………………………. 15

*Town of Castle Rock v. Gonzales,*
  545 U.S. 748 (2005) ………………………………………………………. 16

*Lambert v. California,*
  355 U.S. 225 (1957) ………………………………………………………. 17

*Staples v. United States,*
  511 U.S. 600 (1994) ………………………………………………………. 17

*Connecticut v. Doehr,*
  501 U.S. 1 (1991) …………………………………………………………. 17

*Buchanan v. Warley,*
  245 U.S. 60 (1917) ………………………………………………………… 17

*Allgeyer v. Louisiana,*
  165 U.S. 578 (1897) ……………………………………………………….. 17

*Fuentes v. Shevin,*
  407 U.S. 67 (1972) …………………………………………………. 17, 18, 20

*Meyer v. Nebraska,*
  262 U.S. 390 (1923) ……………………………………………………… 17, 18

*Simi Inv. Co. v. Harris County,*
  236 F.3d 240 (5th Cir. 2000) …………………………………………… 17, 18

*Humana, Inc. v. Avram A. Jacobson, M.D., P.A.,*
  804 F.2d 1390 (5th Cir. 1986) ………………………………………………... 18

*Florida Businessmen for Free Enterprise v. Hollywood,*
  648 F.2d 956 (5th Cir. 1981) …………………………………………………. 19

*Portee v. Morath,*
  683 F. Supp. 3d 628 (W.D. Tex. 2023) …………………………………………. 19

*Nken v. Holder,*
  556 U.S. 418 (2009) ……………………………………………………….. 19

*Deerfield Med. Ctr. v. Deerfield Beach*,
  661 F.2d 328 (5th Cir. 1981) …………………………………………………. 19

*Jackson Women's Health Org. v. Currier,*
  760 F.3d 448 (5th Cir. 2014) …………………………………………………. 19

*Texas v. U.S. Dep't of Homeland Sec.,*
  123 F.4th 186 (5th Cir. 2024) …………………………………………………. 19

**Constitutional Provisions**

U.S. Const. ART. VI ……………………………………………………………………… 9

U.S. CONST. ART. I, § 8, cl. 3………………………………………………………… .. 11, 14

U.S. CONST. ART. II, § 2, cl. 1 ……………………………………………………...... 11

U.S. CONST. AMEND. XIV, § 1 ……………………………………………………… 17

**United States Code**

50 U.S.C. § 4565(k) ……………………………………………………………………... 9

50 U.S.C. § 4565(a)(4)(B)(i) …………………………………………………………… 10

50 U.S.C. § 4565(b)(1)(A)(i) …………………………………………………………… 10

50 U.S.C. § 4565(b)(2)(A) ……………………………………………………………… 10

50 U.S.C. § 4565(a)(4)(B)(i-iii) ………………………………………………………… 10

50 U.S.C. § 4565(a)(6) ………………………………………………………………… 10

50 U.S.C. § 4565(l)(3)(A) ……………………………………………………………… 10

50 U.S.C. § 4565(b)(3)(B) …………………………………………………………… 10, 13

50 U.S.C. § 4565(d)(1) ………………………………………………………………… 10

50 U.S.C. § 4565(d)(4)(A) ……………………………………………………………… 10

50 U.S.C. § 4565(f)……………………………………………………………………… 10

50 U.S.C. § 4565(e)(1) ………………………………………………………………… 10

50 U.S.C. § 4565(d)(3) ………………………………………………………………… 10

50 U.S.C. § 4565(l)(6) ………………………………………………………………… 10

50 U.S.C. § 4565……………………………………………………………………… 10, 11,13

50 U.S.C. § 4565(d) …………………………………………………………………… 13

50 U.S.C. § 4565(c)(3)(A)(i) ………………………………………………………… 13, 14

**State Statutes**

Tex. S.B. 17, 89th Leg., R.S. §1(a)(1) (2025) ………………………………………… 2

Tex. S.B. 17, 89th Leg., R.S. §1(a)(2) (2025) ……………………………………….. 2

Tex. S.B. 17, 89th Leg., R.S. §1(a)(2) (2025) ……………………………………….. 2

Tex. S.B. 17, 89th Leg., R.S. §1(a)(3) (2025) …………………………………….…… 2

Tex. S.B. 17, 89th Leg., R.S. §1(a)(4) (2025) ………………………………………… 2

Tex. S.B. 17, 89th Leg., R.S. § 1(a)(1)(A–H) (2025) ………………………………… 12

TEX. PROP. CODE § 5.005 ……………………………………………………………… 1, 15

TEX. PROP. CODE § 5.251 …………………………………………………………….. 1

TEX. PROP. CODE § 5.252 ……………………………………………………….. 1

TEX. PROP. CODE § 5.252(3) …………………………………………………… 3

TEX. PROP. CODE § 5.253 …………………………………………………1, 2, 3, 15

TEX. PROP. CODE § 5.253(2)(A), (C) …………………………………………… 15

TEX. PROP. CODE § 5.254…………………………………………………………1

TEX. PROP. CODE § 5.255………………………………………………… 1, 15, 16

TEX. PROP. CODE § 5.255(c)(2) ………………………………………………… 3, 16

TEX. PROP. CODE § 5.255(e) ………………………………………………… 2, 3, 16

TEX. PROP. CODE § 5.256………………………………………………………. 1

TEX. PROP. CODE § 5.257………………………………………………… 1, 16

TEX. PROP. CODE § 5.258………………………………………………… 1, 15, 16

TEX. PROP. CODE § 5.258(a)(2)………………………………………………… 14

TEX. PROP. CODE § 5.259………………………………………………… 14, 15, 16

TEX. PROP. CODE § 5.259(a-b) ………………………………………………… 3, 19

TEX. PROP. CODE § 5.253(4)(a) ………………………………………………… 3

## Federal Rules & Regulations

FED. R. EVID. 201(b)(2) ………………………………………………………… 3

FED. R. EVID. 201(b) ………………………………………………………… 4, 5, 6

FED. R. EVID. 201 ……………………………………………………………7, 8, 9, 10

31 C.F.R. § 800.505(b)(2) ……………………………………………………… 10

31 C.F.R. § 800.508(b) ………………………………………………………… 10

31 C.F.R. § 800.901(a)(1) ……………………………………………………… 10, 14

31 C.F.R. § 800.901(d) ………………………………………………………… 10

31 C.F.R. § 800.902(c) ………………………………………………………… 10

31 C.F.R. § 802.901(a) ………………………………………………………… 10, 14

31 C.F.R. § 802.901 (b)(2) ……………………………………………………… 10

## State Administrative Proposed Rules

Proposed Rule, 1 TAC § 67.1(5) ………………………………………………… 3, 7

Proposed Rule, 1 TAC § 67.1(6)(A)(B) ………………………………………... 3, 7

Proposed Rule, 1 TAC § 67.1(2) …………………………………………………. 7

Proposed Rule, 1 TAC § 67.4 …………………………………………………….. 7

Proposed Rule, 1 TAC § 67.3 …………………………………………………….. 7

**Additional Authorities**

*Am. Zhang Decl., - ECF No. 4-2* ……………………………………… *4, 5, 6, 13, 15, 18, 19, 20*

*Second Zhang Decl.,* ECF No. 15-2 …………………………………………...……… 4

*Texas Senate Research Center Bill Analysis for S.B. 17,* (Ex. B)
89th Leg., R.S., dated March 4, 2025, …………………………………………………. 4

*Tex. H. Comm. on Homeland Sec., Pub. Safety & Veterans' Affs., Bill Analysis,* (Ex. C)
C.S.S.B. 17, 89th Leg., R.S. (2025) ……………………………………………….… 5

*Official broadcast of Texas House of Representatives,* (Ex. D)
    89(R) Sess., 59th day, at 3641 (May 8, 2025) …………………………………..….. 5

NBC News, (Ex. E)
    *Trump Touts Investments in the U.S. Pouring in From All Parts of the World,* (May 28,
    2026). ………………………………………………………………………….… 7

White House Fact Sheet, (Ex. F)
*Fact Sheet: President Donald J. Trump Secures Historic Deals with China, Delivering for
American Workers, Farmers, and Industry*, published on May 17, 2026, …………………. 8

Foreign Investment Risk Review Modernization Act of 2018, Pub. L. No. 115-232, 132 Stat.
1636, 2173 (2018) ………………………………………………………………….. 9

U.S. Mission China, *U.S. Relations with China, Bilateral Relations Fact Sheet* (Feb. 13, 2025)
(Ex. G) ………………………………………………………………………….…... 9

Exec. Order No. 11,858, 40 Fed. Reg. 20263 (May 7, 1975) ..………………………………. 9

James K. Jackson, Cong. Rsch. Serv., RL33388, *The Committee on Foreign Investment in the
United States (CFIUS)* (updated Feb. 26, 2020) (Ex.
H).……….………………………...…………. 10, 12

Press Release of the Attorney General (Ex. A) ……………………………… 2, 6, 7, 8, 12, 18

**INDEX OF EXHIBITS**

Ex. A:         Press Release of the Texas Attorney General, dated March 27, 2026.

Exs. A-1 to A-9: Office of the Attorney General's Proposed Rules Enforcing S.B. 17.[1]

         A-1:    Preamble[2]

         A-2:    1 TAC § 67.1 - Purpose and Applicability[3]

         A-3:    1 TAC § 67.2 - Definitions[4]

         A-4:    1 TAC § 67.3 - OAG Enforcement Unit[5]

         A-5:    1 TAC § 67.4 - Complaint Submission[6]

         A-6:    1 TAC § 67.5 - Investigative Demands and Response Requirements[7]

         A-7:    1 TAC § 67.6 - Interagency Coordination[8]

         A-8:    1 TAC § 67.7 - Confidentiality of Records[9]

---

[1] As Plaintiffs have not referenced every Proposed Rule in their Motion for Preliminary Injunction, weblinks to each Proposed Rule are provided in this index.

[2] Available at:
https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_TEXAS_REGISTER_PREAMBLE_SUMMARY&recordId=461252

[3] Available at:
https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_TEXAS_REGISTER_SUMMARY&recordId=461252

[4] Available at:
https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_TEXAS_REGISTER_SUMMARY&recordId=461253

[5] Available at:
https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_TEXAS_REGISTER_SUMMARY&recordId=461254

[6] Available at:
https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_TEXAS_REGISTER_SUMMARY&recordId=461255

[7] Available at:
https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_TEXAS_REGISTER_SUMMARY&recordId=461256

[8] Available at:
https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_TEXAS_REGISTER_SUMMARY&recordId=461257

[9] Available at:
https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_TEXAS_REGISTER_SUMMARY&recordId=461258

A-9:    1 TAC § 67.8 - Savings Clause[10]

A-10:  1 TAC § 67.9 - Severability[11]

Ex. B:    Texas Senate Research Center Bill Analysis for S.B. 17, 89th Leg., R.S., dated March 4, 2025.

Ex. C:    Texas House Committee on Homeland Security, Public Safety & Veterans' Affairs, Bill Analysis of C.S.S.B. 17, 89th Legislature, Regular Session, dated 2025.

Ex. D:    Official Texas House of Representatives Webpage for the Broadcast of Texas House of Representatives, 89th Leg., R.S., 59th Day (May 8, 2025) (PDF printout). Recording at 9:31:46 to 9:39:31.

Ex. E:    NBC News Webpage, *Trump Touts Investments in the U.S. Pouring in From All Parts of the World* (May 28, 2026) (PDF printout of webpage containing video recording).

Ex. F:    The White House, Fact Sheet: President Donald J. Trump Secures Historic Deals with China, Delivering for American Workers, Farmers, and Industry (May 17, 2026).

Ex. G:    U.S. Mission China, *U.S. Relations with China*, *Bilateral Relations Fact Sheet* (Feb. 13, 2025).

Ex. H:    James K. Jackson, Cong. Rsch. Serv., RL33388, *The Committee on Foreign Investment in the United States (CFIUS)* (updated Feb. 26, 2020).

---

[10] Available at:
https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_TEXAS_REGISTER_SUMMARY&recordId=461259

[11] Available at:
https://texas-sos.appianportalsgov.com/rules-and-meetings?interface=VIEW_TEXAS_REGISTER_SUMMARY&recordId=461260

Plaintiffs, Beijing Daxing Huaxin Xingbang Technology Development Research Center ("HXXB") and HXXB USA Research Center ("HXXB USA"), on their own behalf and on behalf of all similarly situated persons subjected to the Challenged Provisions (defined *infra*), hereby submit this Motion for Preliminary Injunction ("Motion") and show this Court as follows:

## INTRODUCTION

On June 20, 2025, Governor Greg Abbott signed into law S.B. 17[1], which went into effect on September 1, 2025, ushering in a sweeping and unprecedented regulatory regime that discriminatorily bars Chinese-domiciled individuals, companies and organizations, and their U.S.-based subsidiaries from owning, purchasing, or leasing, for more than one year (or contiguous one-year periods under Defendant's newly Proposed Rules, to be discussed *infra*), real property in the State of Texas. The statute is a modern-day witch hunt grounded in stereotypes, unsubstantiated fearmongering, and vague insinuations about national-security risks. The statute collapses ordinary real estate transactions into prohibited conduct punishable through both civil and criminal fines and penalties, based solely on a party's national origin and the State's undefined and unbounded "hostile foreign actor" label. The result is a system of suspicion-based prohibitions wholly incompatible with constitutional norms and conflicting federal laws, regulations, and policy.

The provisions of S.B. 17, specifically challenged by this lawsuit and defined below, are facially unconstitutional under the Supremacy Clause, the Commerce Clause, and the Due Process Clause of the Fourteenth Amendment. To prevent further unconstitutional harm to Plaintiffs, this Court should immediately declare these provisions unconstitutional and enjoin the Attorney General from enforcing them.

---

[1] Codified at TEX. PROP. CODE §§ 5.005, 5.251-258.

## STATEMENT OF FACTS

**A.    Challenged Provisions.**

Although Plaintiffs firmly believe S.B. 17 in its entirety is an affront to constitutional rights and guarantees, this Motion for Preliminary Injunction focuses on the sections of S.B. 17 that most immediately, tangibly, and irreparably burden Plaintiffs by preventing them from acquiring a long-term property interest—despite their clear good faith willingness and ability to do so—and subject them to ongoing uncertainty, stigma, and the risk of civil and criminal penalties.[2]  Specifically, Plaintiffs challenge Sections 5.253(2)(A) and (C) and subsection (3) and Section 5.255(e) of S.B. 17 (collectively the "Challenged Provisions"). The Challenged Provisions, and the Proposed Rules, inflict concrete injury today—not hypothetical or speculative harm—and therefore lie at the crux of Plaintiffs' constitutional challenge.

S.B. 17 identifies the countries of China, amongst others, as national security concerns and then indiscriminately expands this category to _any_ individual or entity domiciled in these countries as ripe candidates for discriminatory treatment.[3] More specifically, the Challenged Provisions, effective as of September 1, 2025, cast a broad net over the individuals and entities subject to discrimination under the statute, which include the following: 1) A company or organization that is headquartered in China; 2) A company or organization owned by a company or organization headquartered in China; or 3) A company or organization owned by, or the majority of stock or ownership interested owned by an individual who is domiciled in China and an individual who is a citizen of China but is domiciled elsewhere—except Russia, Iran, and North Korea—but is not

---

[2] _Contrast with_, _Peng Wang v. Paxton_, No. 4:25-cv-03103, 2025 U.S. Dist. LEXIS 159896, at *22 (S.D. Tex. Aug. 18, 2025) (denying preliminary injunction and certification of a class action on the basis that Plaintiffs challenged the _entirety_ of S.B. 17, not just the provisions that impacted them).
[3] Tex. S.B. 17, 89th Leg., R.S. §1(a)(1-4) (2025); TEX. PROP. CODE § 5.253.

a citizen or a lawful permanent resident of that country.[4] Companies and organizations, such as Plaintiffs, and others similarly situated, are categorically prohibited from purchasing commercial space or leasing commercial space where the lease term is greater than one year, or contiguous one-year periods.[5] Where the Attorney General exercises his exclusive investigatory and enforcement authority and determines that a long-term leasehold is held by a party within one of the statute's broad categories, the lease is automatically rendered null and void.[6] The Attorney General can then bring a civil action against an entity for violating the statute. If a violation is established under the statute's arbitrary criteria, an entity is subject to penalty for the greater of $250,000 or 50% of the market value of the interest in real property that is the focus of the violation.[7] Finally, the Attorney General may refer such party for criminal prosecution.[8]

The exemptions to S.B. 17, albeit unconstitutionally restrictive and vague, allow Chinese persons who are lawfully present in the United States from acquiring a residential homestead real property interest, as can those persons who want to lease property for less than one year—although not for contiguous one-year periods.[9] There is no reasonably legitimate basis[10] that exists for a

---

[4] TEX. PROP. CODE § 5.253.

[5] *Id.* §§ 5.253-5.254; Proposed Rule, 1 TAC § 67.1(5)-(6)(A)(B). Plaintiffs respectfully request that the Court take judicial notice of the Proposed Rules and the Preamble thereto, which are published in the Texas Register and attached as Exs. A-1 through A-10. The Proposed Rules are an official state-government record whose existence and contents are not reasonably subject to dispute. FED. R. EVID. 201(b)(2). They are relevant because they confirm the Defendant's interpretation of S.B. 17 and inform how the Challenged Provisions will be implemented by the Attorney General.

[6] TEX. PROP. CODE § 5.255(e).

[7] TEX. PROP. CODE §§ 5.259(a-b).

[8] *Id.* at § 5.255(c)(2).

[9] TEX. PROP. CODE §§ 5.252(3), 5.253(4)(a); Proposed Rule, 1 TAC § 67.1(5)-(6)(A)(B) (attached as Ex. A-2).

[10] *See, e.g., Examining Bd. v. Flores de Otero*, 426 U.S. 572, 602 (1976) (state alienage classifications are subject to "strict judicial scrutiny" and survive only if the government shows the classification is necessary to achieve a constitutionally permissible and substantial interest).

3

party to be able to own a residential property in Texas or rent a commercial property for less than a year, but prevents that same party with a legitimate, good faith interest[11] in leasing property in the State for more than a year. Indeed, under the Challenged Provisions, an individual or entity converts overnight, without notice or process, from a welcome tenant to a "hostile foreign actor" the moment their lease enters the one-year threshold.

**B.        The Alleged Motivation behind S.B. 17 has no Articulated Application to Plaintiffs.**

The official Senate Research Center Bill Analysis claims the statute aims to create "common sense safeguards" against threats identified in the Annual Threat Assessment report prepared by the Director of National Intelligence—not to punish good-faith actors "who seek freedom in Texas."[12] Yet, it revives the kind of national-origin discrimination long condemned by state and federal courts.[13] The enacted law substitutes identity for evidence and presumption for due process by expanding the term "adversarial nations" to broadly include "hostile countries and their actors."[14] The statute fails to meaningfully define "hostile foreign actor" or provide limiting principles beyond association with a Chinese-domiciled individual or entity. While the Texas House cites risks of espionage and influence, federal law already provides detailed processes to

---

[11] *See* Am. Zhang Decl. at ¶¶ 10-18, 60-61, ECF No. 4-2; *see also generally* Second Zhang Decl., ECF No. 15-2.

[12] Tex. S. Research Ctr., Bill Analysis, S.B. 17, 89th Leg., R.S. (Mar. 4, 2025), available at: https://capitol.texas.gov/tlodocs/89R/analysis/html/SB00017I.htm. Plaintiffs respectfully request that the Court take judicial notice of the Bill Analysis, attached hereto as Ex. B, as a public legislative record whose authenticity cannot reasonably be questioned. FED. R. EVID. 201(b). Plaintiffs offer the report not for the truth of any disputed factual assertion contained therein, but to demonstrate the legislature's findings, concerns, and stated purposes in enacting S.B. 17.

[13] *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410, 416 (1948) (*citing Truax v. Raich*, 239 U.S. 33, 42 (1915) ("The assertion of an authority to deny to aliens the opportunity of earning a livelihood … would be tantamount to … deny[ing] them entrance and abode")); *see also Sei Fujii v. State*, 242 P.2d 617 (Cal. 1952) (holding the Alien Land Law unconstitutional).

[14] Tex. S. Research Ctr., Bill Analysis, S.B. 17, 89th Leg., R.S. (attached as Ex. B).

evaluate such threats.[15] Further, as pointed out by Texas House Minority Leader Gene Wu, State officials have no national security clearance to substantiate an individual or an entities national security threat level.[16] Thus, S.B. 17 is not narrowly tailored, despite less restrictive alternatives.[17]

The statute ensnares entities like HXXB and its U.S.-organized subsidiary despite no ties whatsoever to the Chinese government or the Chinese Communist Party ("CCP").[18] Plaintiffs are not government-linked, not designated adversaries, and pose no demonstrated threat.[19] Plaintiffs' semiconductor research is dedicated to advancing innovation for the public—not to benefit the Chinese Government or the CCP or any foreign adversary.[20] They seek to establish R&D operations in Austin, Texas, a nationally recognized semiconductor hub.[21] If permitted to lease office space, HXXB USA plans to hire U.S. workers and transfer personnel under L-1 visas to provide specialized and managerial support.[22] Achieving these goals requires maintaining a

---

[15] *See* Argument Section, pp. 8-14, *infra*; *see also* Tex. H. Comm. on Homeland Sec., Pub. Safety & Veterans' Affs., Bill Analysis, C.S.S.B. 17, 89th Leg., R.S. (2025), available at: https://capitol.texas.gov/tlodocs/89R/analysis/html/SB00017H.htm. Plaintiffs request that the Court take judicial notice of the Bill Analysis, attached hereto as Ex. C, as a public legislative record whose authenticity cannot reasonably be questioned. FED. R. EVID. 201(b). Plaintiffs offer the record not for the truth of any disputed factual assertion contained therein, but to demonstrate the legislature's findings, concerns, and stated purposes in enacting S.B. 17.

[16] Official broadcast of Texas House of Representatives, 89(R) Sess., 59th day, at 3641 (May 8, 2025), recording at 9:31:46 to 9:39:31. The broadcast is available at: https://house.texas.gov/videos/22020. Attached as Ex. D is a PDF printout of the Official Texas House of Representatives webpage for the Broadcast. Plaintiffs respectfully request that the Court take judicial notice of the PDF printout and the underlying Broadcast as public legislative records whose authenticity cannot reasonably be questioned. FED. R. EVID. 201(b). Plaintiffs offer these records not for the truth of any disputed factual assertion contained therein, but to demonstrate the legislature's findings, concerns, and stated purposes in enacting S.B. 17.

[17] *See, e.g., Elrod v. Burns*, 427 U.S. 347 (1976).

[18] Am. Zhang Decl. at ¶¶ 11–13, 61.

[19] *Id.* at ¶¶ 10-17, 27-24, 30-31, 60-61.

[20] *Id.* at ¶¶ 15, 30, 60.

[21] *Id.* at ¶¶ 15, 21-27, 34.

[22] *Id.* at ¶¶ 49-53.

commercial lease of at least three years and relying on HXXB as a qualifying foreign entity under U.S. immigration law.[23]

Plaintiffs have invested substantial resources in their good faith attempt to secure a long-term leasehold interest in the State.[24]  However, Plaintiffs could not countersign the landlord-executed lease because S.B. 17 (and now the Proposed Rules) would, upon investigation by the Attorney General, nullify those agreements under threat of civil and criminal penalties without any evidence of, or requirement to present evidence of, wrongdoing or "hostility" to the State.

## C.    Defendant's Proposed Rules.

On March 27, 2026, the Attorney General released Proposed Rules detailing the framework by which the Attorney General's Office will enforce S.B. 17. The Attorney General's Press Release accompanying release of the Proposed Rules left little doubt that the Attorney General intends to zealously wield his investigatory and enforcement authority under S.B. 17.[25] The Press Release also left little doubt that S.B. 17, and the Attorney General's enforcement philosophy pursuant to same, "express[ ] a distinct political point of view on a specific matter of foreign policy" and employ "politically charged" labels.[26] Specifically, the Attorney General pledged to:

> "…[U]se every tool available to prevent our nation's enemies from gaining a foothold on Texas soil…These proposed rules will strengthen the reporting of suspicious activity and better protect our state from hostile foreign actors."[27]

---

[23] *Id.*

[24] *Id.* at ¶¶ 39-47.

[25] *Tex. Att'y Gen.*, Attorney General Ken Paxon Proposes Rules to Stop Designated Foreign Adversaries, Including China, from Owning Texas Land (March 27, 2026), available at: https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-proposes-rules-stop-designated-foreign-adversaries-including-china. Plaintiffs request that the Court take judicial notice of the Press Release, attached hereto as Ex. A, as courts may take judicial notice of matters of public record, including information posted on official government websites. *See* FED. R. EVID. 201(b).

[26] *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1076 (9th Cir. 2012).

[27] Press Release of the Attorney General (attached as Ex. A).

The Proposed Rules go inexplicably further than S.B. 17 itself, imposing additional investigatory and enforcement mechanisms that further restrict access to the Texas commercial real estate market. Notably, the Proposed Rules: 1) Prohibit successive short-term arrangements that effectively create leasehold interests exceeding one year;[28] 2) Broadly define "control" to include direct or indirect influence over the management or policies of an entity;[29] 3) Require certain real estate professionals to report suspected S.B. 17 violations to the Office of the Attorney General ("OAG");[30] and 4) Create a dedicated OAG enforcement unit to investigate and enforce compliance with S.B. 17.[31] Like the statute itself, the Proposed Rules provide no standards for determining whether an individual or entity is a "hostile foreign actor" or a genuine national security threat. National origin alone is dispositive.

**D.      Federal Objective in Attracting Inbound Chinese Investment Impeded by S.B. 17.**

President Trump has emphasized foreign investment as a central economic priority, stating that investment is "now pouring in from all parts of the world."[32] On May 17, 2026, The White House stated that President Trump and President Xi chartered a U.S.-China Board of Investment as an institution designed to "optimize the bilateral economic relationship," with the Board serving as a government-to-government forum for investment-related topics.[33] S.B. 17 compromises the

---

[28] Proposed Rules, 1 TAC § 67.1(5)-(6)(A)(B) (attached as Ex. A-2).

[29] *Id.* at § 67.1(2).

[30] 1 TAC § 67.4 (attached as Ex. A-5).

[31] 1 TAC § 67.3 (attached as Ex. A-4).

[32] NBC News, *Trump Touts Investments in the U.S. Pouring in From All Parts of the World* (May 28, 2026), available at:
https://www.nbcnews.com/video/trump-touts-investments-in-the-u-s-pouring-in-from-all-parts-of-the-world-248154181847. A PDF printout of the NBC News webpage containing the video recording is attached as Ex. E. Pursuant to Federal Rule of Evidence 201, Plaintiffs request that the Court take judicial notice of the publicly available NBC News video report. Plaintiffs do not offer the video for the truth of any disputed factual assertions contained therein, but solely to establish that the statements reflected in the video were made and publicly disseminated.

[33] Pursuant to Federal Rule of Evidence 201, Plaintiffs respectfully request that the Court take judicial notice of the White House Fact Sheet entitled "Fact Sheet: President Donald J. Trump

President's efforts by foreclosing Texas investment opportunities for Chinese-domiciled individuals and entities.[34]

## ARGUMENT

To obtain a preliminary injunction, Plaintiffs must "establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."[35] The movants must make a clear showing that they are entitled to the injunction.[36]

### A.        Plaintiffs are Likely to Succeed on the Merits of their Claims.

The likelihood of success factor is "arguably the most important factor."[37] Although a likelihood of success means something more than just a possibility of success, it is something less than actual success.[38]

---

Secures Historic Deals with China, Delivering for American Workers, Farmers, and Industry," published on May 17, 2026, attached as Ex. F and available on the official White House website at: https://www.whitehouse.gov/fact-sheets/2026/05/fact-sheet-president-donald-j-trump-secures-historic-deals-with-china-delivering-for-american-workers-farmers-and-industry/. The fact sheet is a publicly available government record whose authenticity cannot reasonably be questioned. Plaintiffs offer the document to establish the government's official statements and position.

[34] While the Senate Research Center Bill Analysis (attached as Ex. B) claims the "bill bans private property ownership by named entities, not foreign business investments in Texas," this assertion is largely illusory given that the Proposed Rules – Definitions (attached as Ex. A-3) broadly define "control" to include direct or indirect influence over the management or policies of an entity—whether real estate related or otherwise—leaving little investment opportunities in Texas for Chinese-domiciled entities or individuals beyond the scope of the Attorney General's sweeping interpretation of S.B. 17.

[35] *Book People, Inc. v. Wong*, 91 F.4th 318, 336 (5th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 297 (5th Cir. 2012) (holding that plaintiff had "established a substantial threat of irreparable harm [as] it will lose its lease if it is not allowed to operate in its leased property.").

[36] *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017).

[37] *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005).

[38] *Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009).

a. **Federal Immigration and Investment Laws Preempt the Challenged Provisions Under the Supremacy Clause.**

The Constitution, federal law, and treaties are the supreme law of the land.[39] "[A]ny state law that contradicts federal law is preempted."[40] In this matter, there are two types of preemption at issue: field preemption and conflict preemption.

1. The Federal CFIUS Laws are Expansive, Calibrated and Imbued with Discretion.

In 1975, President Ford established the Committee on Foreign Investment in the United States ("CFIUS").[41] Congress has since repeatedly affirmed a national policy of maintaining an open investment environment to promote reciprocity and expand opportunities for U.S. businesses abroad, emphasizing that the United States should continue to "enthusiastically welcome and support foreign investment."[42] At the same time, Congress recognized that certain foreign investments may implicate national security concerns and therefore vested the President and CFIUS with broad, flexible authority to assess and address those risks.[43] That carefully calibrated federal framework is reflected in CFIUS's composition, which includes cabinet-level officials charged with "foreign policy, national security, and economic responsibilities."[44]

---

[39] U.S. CONST. ART. VI.

[40] *Zyla Life Scis., L.L.C. v. Wells Pharma of Hous., L.L.C.,* 134 F.4th 326, 328 (5th Cir. 2025).

[41] Exec. Order No. 11,858, 40 Fed. Reg. 20263 (May 7, 1975).

[42] Foreign Investment Risk Review Modernization Act of 2018 (FIRRMA), Pub. L. No. 115-232, 132 Stat. 1636, 2173 (2018). The Congressional preference for this policy is obvious. For instance, China alone invested $28 billion in the United States in 2023, primarily in manufacturing, real estate, and depository institutions. *See* U.S. Mission China, *U.S. Relations with China, Bilateral Relations Fact Sheet* (Feb. 13, 2025), attached as Ex. G and available at: https://china.usembassy-china.org.cn/u-s-relations-with-china/. Pursuant to Federal Rule of Evidence 201, Plaintiffs respectfully request that the Court take judicial notice of the publicly available report. Plaintiffs do not offer the report for the truth of any disputed factual assertions contained therein, but, rather, offer it solely to establish that the statements in the report were made and publicly disseminated.

[43] *Id.*

[44] 50 U.S.C. § 4565(k); *Ralls Corp. v. Committee on Foreign Investment in the United States*, 758 F.3d 296, 302 (D.C. Cir. 2014).

2.   <u>Transactions Reviewed for National Security Considerations Under CFIUS.</u>

Congress empowered CFIUS to review those transactions that involve any "merger, acquisition, or takeover" that results in foreign control of a United States business.[45] Covered transactions must be reviewed by CFIUS "to determine the effects of the transaction on the national security of the United States."[46] If CFIUS determines a transaction may threaten national security, it must investigate and take appropriate action.[47] An investigation is also required where a transaction results in foreign control of critical infrastructure or technology[48] (such as semiconductors[49]).

CFIUS may mitigate risks through negotiated agreements; if successful, it concludes its review and reports to Congress.[50] Otherwise, CFIUS refers the matter to the President, who alone may suspend or prohibit the transaction upon finding a national security threat.[51] The President's decision is unreviewable and may be enforced through the Attorney General.[52] CFIUS and its member agencies may monitor and enforce mitigation agreements and impose civil penalties, damages, and injunctive relief for violations or material misstatements.[53]

---

[45] 50 U.S.C. § 4565(a)(4)(B)(i).

[46] *Id*. at § 4565(b)(1)(A)(i).

[47] *Id.* § 4565(b)(2)(A).

[48] 31 C.F.R. § 800.505(b)(2); 50 U.S.C. at § 4565(a)(4)(B)(i-iii).

[49] Semiconductors are considered critical technologies. 50 U.S.C. § 4565(a)(6); *see also* James K. Jackson, Cong. Rsch. Serv., RL33388, *The Committee on Foreign Investment in the United States (CFIUS)* (updated Feb. 26, 2020) p. 20, attached as Ex. H and available at: https://www.congress.gov/crs_external_products/RL/PDF/RL33388/RL33388.93.pdf.    Pursuant to Federal Rule of Evidence 201, Plaintiffs respectfully request that the Court take judicial notice of the Report, as a publicly available government publication whose authenticity cannot reasonably be questioned.

[50] 50 U.S.C. § 4565(l)(3)(A); *id.* at § 4565(b)(3)(B).

[51] *Id.* at § 4565(d)(1), (d)(4)(A); 31 C.F.R. § 800.508(b).

[52] 50 U.S.C. § 4565(f), (e)(1); *id.* at § 4565(d)(3).

[53] *Id.* at § 4565(l)(6); 31 C.F.R. § 800.901(a)(1), (d); *id.* at § 800.902(c); *id.* at § 802.901(a), (b)(2); *id.* at § 802.902(c).

3. <u>The Challenged Provisions are Field and Obstacle Preempted.</u>

a. The Challenged Provisions are Field Preempted.

State law is field preempted where "Congress occupies the entire field," thereby prohibiting even complementary state legislation.[54] Field preemption reflects a "congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards."[55] It is well settled that preemption extends to federal control over foreign affairs, which must remain "entirely free from local interference."[56] A state law is preempted if it "disturb[s] foreign relations" or amounts to the state establishing its own foreign policy—even absent direct conflict with federal law.[57] The Constitution vests foreign affairs and foreign commerce powers exclusively in the federal government.[58] In this domain, the President's power is at its zenith, encompassing both inherent and delegated authority.[59]

The President broad discretion over foreign investment decisions, balancing national security with economic openness.[60] Federal government regulates inbound foreign investment

---

[54] *Arizona v. United States*, 567 U.S. 387, 401-02 (2012); *see also Zschernig v. Miller*, 389 U.S. 429, 440–41 (1968) (invalidating a state law conditioning inheritance on reciprocal rights because it required courts to evaluate foreign regimes and thereby "affect[ed] international relations"); *American Ins. Ass'n v. Garamendi*, 539 U.S. 396, 419 n.11 (2003) (field preemption applies where a state takes a position on foreign policy, even absent direct conflict).

[55] *Arizona*, 567 U.S. at 401; *see also Zyla Life Scis., L.L.C.*, 134 F.4th at 329; *Odebrecht Constr. v. Sec'y, Fla. DOT*, 715 F.3d 1268, 1272 (11th Cir. 2013) (finding likely Supremacy Clause violation where a state Cuba-related law conflicted with a comprehensive federal sanctions regime thereby undermining the President's ability to speak with one voice).

[56] *Hines v. Davidowitz*, 312 U.S. 52, 63 (1941).

[57] *Zschernig*, 389 U.S. at 441.

[58] U.S. CONST. ART. I, § 8, cl. 3; U.S. CONST. ART. II, § 2, cl. 1.

[59] *Garamendi*, 539 U.S. at 419 n.11 (2003) ("[T]he Constitution entrusts foreign policy exclusively to the National Government"); *United States v. Pink*, 315 U.S. 203, 233 (1942) (same); *United States v. Belmont*, 301 U.S. 324, 331 (1937) ("Complete power over international affairs is in the national government and…cannot be subject to…interference… [by] the [ ] states."); *Ziglar v. Abbasi*, 582 U.S. 120, 142 (2017) ("National-security policy" and foreign policy are "the prerogative of the Congress and President[.]")

[60] 50 U.S.C. § 4565 *et seq.*

through countless statutes and regulations, which leaves no room for states.[61] This framework allows the President and CFIUS to review, mitigate, or block transactions as necessary. As discussed above, this centralized, comprehensive, federal regime reflects a deliberate choice to maintain a unified national approach to foreign investment and international economic relations—it leaves no room for complementary, let alone conflicting state regulation.

S.B. 17's legislative findings, in addition to Defendant's Press Release on the Proposed Rules, confirm the State has entered a field fully occupied by the federal government. They explicitly identify Chinese-domiciled entities and individuals and their wholly owned subsidies as threats and restrict property rights and investment opportunities accordingly.[62] By doing so, the State "expresses a distinct political point of view on a specific matter of foreign policy"[63] The Challenged Provisions intrude into a particularly sensitive and an exclusively federal domain by categorically targeting Chinese-domiciled entities and individuals and their U.S. subsidiaries based on blanket assumptions of national security risks, without individualized assessment, factual findings, investigation, or federal alignment. Such measures have "more than some incidental or indirect effect on foreign affairs" and therefore conflict with the Supremacy Clause.[64]

b.     The Challenged Provisions are Preempted Under Obstacle Preemption.

State law is preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[65] As mentioned, Congress has delegated to the President—through CFIUS—broad authority over foreign investment and access to the U.S.

---

[61] Jackson CRS Report at 6 (attached as Ex. H).
[62] S.B. 17 § 1(a)(1)(A–H); Press Release of the Attorney General (attached as Ex. A); *see also generally* the Proposed Rules (attached as Exs. A-1 to A-10).
[63] *Movsesian*, 670 F.3d at 1077; *see also Zschernig*, 389 U.S. at 434.
[64] *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 366 (2000); *Zschernig*, 389 U.S. at 443.
[65] *Hines*, 312 U.S. at 67; *see also Zyla Life Scis.*, 134 F.4th at 328.

12

economy, including Texas.[66] The Challenged Provisions not only frustrate Congress's objectives, but they also achieve the opposite goal of the President's express foreign policy toward China, "compromis[ing] the very capacity of the President to speak for the Nation with one voice."[67] The President holds the lead role in foreign affairs[68] and declared a clear interest in attracting inbound investment from China.[69] In addition, Congress has vested in the President the full might of diplomatic control over relations with China.[70] The Challenged Provisions override this authority by categorically barring Chinese-domiciled entities from holding long-term leasehold interests, effectively displacing federal discretion and restricting the President's leverage.[71]

By removing Texas from the U.S. real estate and investment market for Chinese-domiciled individuals and entities, the Challenged Provisions "strip federal officials of the authority and discretion necessary in managing foreign affairs,"[72] diminish the President's economic and diplomatic leverage and weaken the federal government's ability to use market access as a bargaining tool.[73] S.B. 17's categorical ban imposes "a different state system of economic pressure," frustrating Congress's chosen approach and disrupting coordinated federal and international strategy.[74] This outcome unconstitutionally "compromise[s] the very capacity of the

---

[66] *See, e.g.,* 50 U.S.C. § 4565 *et seq.*

[67] *Crosby*, 530 U.S. at 381 (preempting a state sanctions regime that displaced the President's discretion over Burma); *see also Garamendi*, 539 U.S. at 421; *Arizona*, 567 U.S. at 396–97, 409 (invalidating a state law that interfered with federal discretion over immigration enforcement).

[68] *First Nat'l City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 767 (1972); *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936).

[69] *Id.*

[70] *See generally Garamendi*, 539 U.S. 396; *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434 (1979); *Oyama v. California*, 332 U.S. 633, 635 (1948).

[71] *See* 50 U.S.C. § 4565(b)(3)(B), (d); *Crosby*, 530 U.S. at 377; Am. Zhang Decl. ¶¶ 39, 59–60.

[72] *United States v. South Carolina*, 720 F.3d 518, 532 (4th Cir. 2013).

[73] *Crosby*, 530 U.S. at 377; *see also Garamendi*, 539 U.S. at 423–24.

[74] *Crosby*, 530 U.S. at 376-77; *Garamendi*, 539 U.S. at 401, 421–24; *see also Arizona*, 567 U.S. at 408-09; 50 U.S.C. § 4565(c)(3)(A)(i).

President to speak for the Nation with one voice."[75] It further counters coordinated national policy toward China and risks serious international consequences.[76]

Finally, Congress deliberately chose civil—not criminal—enforcement for CFIUS violations.[77] By contrast, S.B. 17 imposes criminal penalties and authorizes civil sanctions without requiring proof of intent.[78] That regime conflicts with Congress's calibrated approach to balancing national security and foreign investment and frustrates federal objectives.[79]

### b. The Challenged Provisions Violate the Foreign Commerce Clause.

The Constitution grants Congress exclusive and plenary authority over foreign commerce, sharply limiting state regulation under the dormant Foreign Commerce Clause.[80] Because foreign commerce implicates uniquely national concerns, state laws "inimical to the national commerce" are unconstitutional even absent congressional action, and facially discriminatory laws are "virtually per se invalid," particularly where they risk foreign retaliation or undermine the federal government's ability to speak with one voice.[81] Even nondiscriminatory laws fail if they interfere with federal commercial or foreign policy.[82]

---

[75] *Crosby*, 530 U.S. at 381; *see also Zschernig*, 389 U.S. at 441.

[76] 50 U.S.C. § 4565(c)(3)(A)(i); *Crosby*, 530 U.S. at 381–82; *Zschernig*, 389 U.S. at 441.

[77] 31 C.F.R. §§ 800.901(a)(1), 802.901(a).

[78] TEX. PROP. CODE §§ 5.258(a)(2), 5.259.

[79] *See Arizona*, 567 U.S. at 406.

[80] U.S. CONST. ART. I, § 8, cl. 3; *Japan Line*, 441 U.S. at 449 ("[T]he Federal Government must speak with one voice when regulating commercial relations with foreign governments."); *Bd. of Trs. of Univ. of Ill. v. United States*, 289 U.S. 48, 56-57 (1933) (same); *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 571–72 (1997).

[81] *Barclays Bank Plc v. Franchise Tax Bd.*, 512 U.S. 298, 310 (1994); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 750 (5th Cir. 2006); *Kraft Gen. Foods, Inc. v. Iowa Dept. of Revenue and Finance*, 505 U.S. 71, 81 (1992).

[82] *Japan Line*, 441 U.S. at 449; *Piazza's Seafood World*, 448 F.3d at 750; *Takahashi*, 334 U.S. at 416.

14

The Challenged Provisions are facially discriminatory. They categorically restrict property leasing based solely on national origin and domicile, targeting Chinese-headquartered entities and organizations allegedly controlled by Chinese-domiciled nationals regardless of any actual ties to the Chinese government or the CCP.[83] Under both the statute and Proposed Rules, the Attorney General need not conduct any individualized assessment or determine whether prohibiting a lease serves a legitimate national security interest;[84] domicile alone is enough raise the drawbridge and close the gates to the Texas commercial real estate market. That blanket exclusion is constitutionally fatal.[85]

The statute also disrupts federal uniformity in foreign commerce and foreign affairs by imposing state-level restrictions that conflict with Congress's and the President's calibrated approach to foreign investment and national security.[86] Unlike CFIUS, which conducts individualized, case-by-case reviews under 50 U.S.C. § 4565, the Challenged Provisions impose categorical bans and attach civil and criminal penalties without individualized findings.[87] If replicated by other states, such laws would fracture national policy, invite foreign retaliation, and prevent the United States from speaking with one voice in international economic relations.[88]

c. **The Challenged Provisions Violate the Due Process Clause.**

   1. Procedural and Substantive Due Process.

---

[83] TEX. PROP. CODE §§ 5.005, 5.253(2)(A), (C); *Or. Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 95, 99 (1994); *Dennis v. Higgins*, 498 U.S. 439, 446 (1991) (Commerce Clause protects individual "rights, benefits, and privileges" against discriminatory state regulation.); Am. Zhang Decl. at ¶¶ 11-13.

[84] TEX. PROP. CODE §§ 5.253, 5.255, 5.258–5.259.

[85] *New Energy Co. v. Limbach*, 486 U.S. 269, 276 (1988); *Or. Waste*, 511 U.S. at 101; *Chemical Waste Mgmt., Inc. v. Hunt*, 504 U.S. 334, 342 (1992).

[86] *Japan Line*, 441 U.S. at 448–51; *Takahashi*, 334 U.S. at 412.

[87] TEX. PROP. CODE § 5.253.

[88] *Id.*

Where the Attorney General's exclusive investigatory authority is exercised and a violation of S.B.17 is subsequently alleged, the Challenged Provisions automatically void any commercial lease exceeding one year entered into by a company or organization owned or controlled by an entity or individual domiciled in China—without notice, hearing, investigation, or individualized determination.[89] Neither the statute nor the Proposed Rules provide standards or procedures for determining whether a lessee poses a security threat, a mechanism for contesting the State's nullification of leasehold rights, or a requirement that the Attorney General demonstrate any nexus between Plaintiffs' good-faith leasing activity and the State's alleged security interests.[90] Rather than regulating leasing activity, the statute categorically bars a defined class from entering long-term commercial leases and subjects them to severe civil and criminal penalties based solely on national origin.[91] The automatic voiding of a leasehold interest and imposition or threat of imposition of crushing penalties without notice or an opportunity to be heard violates fundamental procedural due process guarantees.[92]

The Challenged Provisions further violate due process by imposing strict liability for wholly passive and otherwise lawful conduct: entering into a standard commercial lease. If an entity falls within the statute's coverage, execution of a lease exceeding one year, or contiguous one-year leases, constitutes an automatic violation, regardless of intent, knowledge, or actual risk of harm to the national security interests of the State.[93] The Attorney General may then refer the

---

[89] TEX. PROP. CODE § 5.255(e).

[90] *Id.*

[91] *Id.* at §§ 5.255, 5.257–5.259.

[92] *See Sei Fujii*, 242 P.2d at 627 (rejecting classifications denying property rights "solely because [individuals] are Japanese and not French or Italian"); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 793 (2005) (due process requires a decisionmaker to hear the claimant and apply relevant criteria to prevent arbitrary deprivation).

[93] TEX. PROP. CODE § 5.255(e).

16

matter for prosecution without any showing that the lessee engaged in knowingly wrongful conduct or posed a security threat.[94] The statute requires no individualized inquiry and establishes no procedures for determining whether a violation meaningfully or reasonably implicates national security concerns.

Longstanding Supreme Court precedent holds that criminalizing passive status without notice or inquiry violates fundamental fairness.[95] Likewise, imposing felony-level or quasi-criminal strict liability for ordinary commercial conduct impermissibly punishes morally innocent behavior.[96] By imposing criminal and civil penalties on ordinary commercial activity based solely on national origin, without individualized findings or procedural safeguards, the Challenged Provisions impermissibly burden Plaintiffs' liberty and property interests and are arbitrary, irrational, and untethered to any legitimate governmental objective.[97]

2.  Deprivation of Liberty/Property Interests without Due Process.

State action that categorically bars a class of individuals from entering lawful lease agreements—without individualized determinations, hearings, or an opportunity to rebut—violates procedural due process.[98] Such a regime replaces adjudication with irrebuttable assumptions, a defect long recognized as incompatible with Due Process.[99]

---

[94] *Id.* at §§ 5.255(c)(2), 5.258–5.259.

[95] *Lambert v. California*, 355 U.S. 225, 228–30 (1957); *Staples v. United States*, 511 U.S. 600, 602 (1994) (reversing based on the principle that the statute's harsh penalties supported requiring proof of *mens rea*).

[96] *Staples*, 511 U.S. at 618–19.

[97] *Id.*

[98] U.S. CONST. AMEND. XIV, § 1 (prohibiting states from depriving any person of life, liberty, or property without due process or denying equal protection); *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991) ("even . . . temporary or partial impairments to property rights" warrant due process protection); *Buchanan v. Warley*, 245 U.S. 60, 74 (1917); *Allgeyer v. Louisiana*, 165 U.S. 578, 589 (1897).

[99] *See Fuentes v. Shevin*, 407 U.S. 67, 69 (1972) (requiring a hearing before deprivation of property); *Meyer v. Nebraska*, 262 U.S. 390, 396 (1923) (liberty includes the right to contract and enjoy common-law privileges); *Simi Inv. Co. v. Harris County*, 236 F.3d 240, 242 (5th Cir. 2000)

Plaintiffs possess protected liberty and property interests in contract formation, leasehold acquisition, and lawful commercial activity in Texas. By automatically voiding lease agreements and mandating divestiture without meaningful process, the Challenged Provisions deprive Plaintiffs of protected rights through procedures that are neither narrowly tailored nor constitutionally adequate. Such automatic divestiture is *per se* unconstitutional under the Due Process Clause.[100]

B.    **Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm.**

To establish irreparable harm, Plaintiffs must show "a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm."[101]  As detailed *supra*, Plaintiffs have already suffered financial injury due to the Challenged Provisions.[102] They have incurred substantial deposits and overhead costs negotiating leases they would have executed but for the Challenged Provisions' arbitrary and discriminatory effect.[103] In conflict with federal law, Plaintiffs have also been categorically deprived of a property interest[104] in Texas without notice or a hearing—an actual, ongoing injury, not a speculative one.[105]

Plaintiffs' fears are only sharply amplified by the Attorney General's recent pledge to enforce the Challenged Provisions aggressively and without hesitation.[106]  If Plaintiffs enter leases they have expended substantial time and resources negotiating, they could owe the State of Texas at least $250,000 or 50% of the transaction interest, whichever is greater—a crippling sanction

---

(arbitrary interference with property violates substantive due process); *see also Oyama*, 332 U.S. at  647 (states may not subordinate property rights based on national origin).

[100] *Id.*

[101] *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986).

[102] Am. Zhang Decl. at ¶¶ 39-47.

[103] *Id.* at ¶ 45-46.

[104] *Opulent Life Church*, 697 F.3d at 297 (the deprivation of real property interests constitutes irreparable harm).

[105] *Id.*

[106] Press Release of the Attorney General (attached as Ex. A).

given Plaintiffs' anticipated hiring and startup costs exceed $3 million.[107] Accordingly, absent an injunction barring the Attorney General from enforcing the Challenged Provisions, Plaintiffs will be forced to forgo the negotiated leases, and relinquish any effort to replicate the same lease-search process. In addition, Plaintiffs will be effectively prevented from engaging in foreign or interstate commerce in Texas in violation of the U.S. Constitution.[108]

**C.** **Granting the Requested Injunction Outweighs the Benefits of Denying the Injunction and Granting the Injunction is in the Public's Interest.**

When a preliminary injunction is sought against the government, the final two factors—balance of equities and public interest—merge.[109] Neither Texas nor its citizens have a legitimate interest in enforcing a law that violates federal law; to the contrary, the public interest favors preventing constitutional violations.[110] Furthermore, the public interest is served by ensuring that national security remains a federal concern, not a pretext for non-federal actors to conduct discriminatory or politically-motivated witch hunts.  The public interest also favors an injunction because it promotes economic activity.[111] HXXB USA is prepared to lease property in Texas, has engaged brokers and landlords, and has incurred costs in doing so.[112] If permitted, it would hire Texas workers.[113]  Other inbound Chinese investments currently barred by S.B. 17 would also likely enter Texas and hire Texas workers if the Challenged Provisions are enjoined.  None of this can occur unless companies like Plaintiffs can secure a long-term commercial lease in Texas,

---

[107] TEX. PROP. CODE §§ 5.259(a-b).

[108] *See Florida Businessmen for Free Enterprise v. Hollywood*, 648 F.2d 956, 958 n.2 (5th Cir. 1981) (substantial business losses may constitute irreparable harm where damages are difficult to calculate or risk bankruptcy); *Portee v. Morath*, 683 F. Supp. 3d 628, 636 (W.D. Tex. 2023) (irreparable harm where state action prevents a plaintiff from working in her chosen profession).

[109] *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Book People*, 91 F.4th at 341.

[110] *Book People*, 91 F.4th at 341; *Deerfield Med. Ctr. v. Deerfield Beach*, 661 F.2d 328, 335–36 (5th Cir. 1981); *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014).

[111] *Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 213 (5th Cir. 2024).

[112] *See* Zhang Decl. at ¶ 46.

[113] *Id.* at ¶¶ 36, 40, 49.

which they are currently barred from doing.[114] Without relief, their plans to operate in Texas will likely never materialize.[115]

In sum, the State identifies no legitimate public interest justifying its categorical prohibition on Plaintiffs' ability to lease property. The ban prevents lawful activity, undermines economic benefits, and conflicts with constitutional protections, warranting injunctive relief.

### CONCLUSION

Plaintiffs, and those similarly situated persons subject to the Challenged Provisions, readily satisfy the preliminary injunction standard. S.B. 17 effects an automatic deprivation of protected property interests—backed by civil and criminal penalties—without notice or a hearing, in violation of procedural due process.[116] The statute also intrudes into the exclusive federal domain of foreign and commercial affairs by substituting state judgments for federal determinations. The resulting constitutional violations constitute irreparable harm, and the State has no legitimate interest in enforcing such a law.[117] Accordingly, the balance of equities and public interest favor relief, and the Court should enjoin the Attorney General from enforcing the statute.

---

[114] *Id.* at ¶ 60.
[115] *Id.*
[116] *See generally, Fuentes*, 407 U.S. 67.
[117] *See, e.g., Zschernig*, 389 U.S. at 440.

DATED: June 30, 2026

Respectfully submitted,

*Attorneys for Plaintiffs*

/s/ Laura E. Schut
Laura E. Schut (TX Bar No. 24161306)
Email: Laura.Schut@HXXB.org

HXXB USA Research Center
Phone: 281-755-3824

Curtis Lee Morrison (WDTX Bar No. 321106)
Email: curtis@redeaglelaw.com

Zhao Guo (DDC Bar No. NY0492) *
Email: chuck@redeaglelaw.com

**Red Eagle Law, L.C.**
5256 S Mission Rd, Suite 135
Bonsall, CA 92003
Phone: 714-661-3446

*\* Motion for Pro Hac Vice Granted*

21

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on June 30, 2026, a true and correct copy of the above and foregoing document has been served using the CM/ECF system to all counsel and parties of record.

WADE A. JOHNSON
Texas Attorney General's Office
PO Box 12548
Austin, TX 78711
512-463-4139
Email: wade.johnson@oag.texas.gov
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

LAUREN ELISE SAEGER
Texas Attorney General's Office
Special Litigation Division
P.O. Box 12548
Capitol Station
Austin, TX 78711-2548
512-463-2100
Email: lauren.saeger@oag.texas.gov
ATTORNEY TO BE NOTICED

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Telephone: (512) 463-2100

Respectfully submitted,

/s/ Laura E. Schut
Laura E. Schut
Tx. Bar. No. 24161306
Attorney in charge for Plaintiffs
HXXB and HXXB USA
281-755-3824
Laura.Schut@HXXB.org

22

## CERTIFICATE OF CONFERENCE

I hereby certify that on June 29, 2026, counsel for Plaintiffs conferred with counsels for Defendant Regarding Plaintiffs' Motion for Leave to File a Sur-Reply. Counsel conferred via email with Defendant's counsels. Defendant opposes the relief requested in the Motion.

Respectfully submitted,

/s/ Laura E. Schut
Laura E. Schut
Tx. Bar. No. 24161306
Attorney in charge for Plaintiffs
HXXB and HXXB USA
281-755-3824
Laura.Schut@HXXB.org

23