FILED

July 23, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Christian Rodriguez_
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

BEIJING DAXING HUAXIN XINGBANG   §
SCIENCE AND TECHNOLOGY           §
DEVELOPMENT RESEARCH             §
CENTER, *individually and on behalf of all*   §
*others similarly situated*, and HXXB USA   §
RESEARCH CENTER, *individually and on*   §
*behalf of all others similarly situated*,   §
                                 §
        Plaintiffs,              §
                                 §          1:25-CV-1981-RP
v.                               §
                                 §
KEN PAXTON, *in his official capacity as*   §
*Attorney General for the State of Texas*,   §
                                 §
        Defendant.               §

## ORDER

Before the Court is a Motion to Dismiss filed by Defendant Ken Paxton, in his official

capacity as Attorney General for the State of Texas ("Paxton"), (Dkt. 11). Plaintiffs Beijing Daxing

Huaxin Xingbang Science and Technology Development Research Center ("HXXB") and HXXB

USA Research Center ("HXXB USA") (together, "Plaintiffs") filed a response, (Dkt. 12). Paxton

filed a reply, (Dkt. 14), and Plaintiffs filed a sur-reply, (Dkt. 16). Also before the Court is a Motion

for Preliminary Injunction filed by Plaintiffs, (Dkt. 31), containing additional facts which occurred

since the filing of the Amended Complaint and the Motion to Dismiss briefing. The parties' agreed

response deadline to that Motion has not passed yet. (Dkt. 32). Having considered the Motion to

Dismiss briefing, the Amended Complaint, (Dkt. 4), and the relevant law, the Court finds that

Paxton's Motion to Dismiss, (Dkt. 11), should be granted as to HXXB, and that as to HXXB USA,

Plaintiffs' subsequent allegations contained in the Motion for Preliminary Injunction, are relevant to

the Court's consideration of the Motion to Dismiss, and must be re-pleaded in a Second Amended

Complaint. As such, Paxton's Motion to Dismiss, (Dkt. 11), will be granted in part as to Plaintiff HXXB and is otherwise moot.

## I. BACKGROUND

This case concerns the application of Senate Bill 17 ("SB 17"), signed into law on June 20, 2025, (*see* Tex. Prop. Code § 5.253[1]), to HXXB, a research organization headquartered in China, and HXXB USA, its subsidiary in the United States, (Am. Compl., Dkt. 4, at 6). SB 17 regulates the acquisition of real estate in Texas by certain foreign individuals and entities from "designated countr[ies]." Tex. Prop. Code § 5.251. Designated countries include those identified by the United States Director of National Intelligence as posing "a risk to the national security of the United States." *Id.* § 5.251(3)(A). That list includes China, Russia, Iran, and North Korea. *Wang v. Paxton*, 161 F.4th 357, 358 (5th Cir. 2025) (describing the background of and enforcement procedures for SB 17). SB 17 declares that a "company or organization" that is either (1) "headquartered in a designated country;" (2) "owned by or the majority of stock or other ownership interest" by individuals who are "domiciled in a designated country";[2] or (3) owned by a company or organization that meets the first two criteria "may not purchase or otherwise acquire an interest in real property" in Texas. Tex. Prop. Code § 5.253. As to enforcement, SB 17 states that Paxton "shall establish procedures to examine a purchase or acquisition of an interest in real property and determine whether an investigation of a possible violation of this subchapter is warranted." *Id.* § 5.255(a). Upon finding a violation of SB 17, the Attorney General "may refer the matter to the appropriate local, state, or federal law enforcement agency." *Id.* § 5.255(c)(2). Under Texas law,

---

[1] Plaintiffs challenge Sections 5.253(2)(A) and (C) and subsection (3) and Section 5.255(e)(1), effective September 1, 2025 (hereinafter the "challenged provisions"). (Resp., Dkt. 12, at 8).
[2] The statute also defines what it means for a person to be "domiciled": "having established a place as an individual's true, fixed, and permanent home and principal residence to which the individual intends to return whenever absent." Tex. Prop. Code § 5.251(4).

"'[m]ay' creates discretionary authority or grants permission or a power," and "'[s]hall' imposes a duty." Tex. Gov. Code § 311.016.

HXXB and HXXB USA work "to research and enhance semiconductor technology" including through "design verification, application, and transfer of specialty chips for small appliances and intelligent devices." (Am. Compl., Dkt. 4, at 5). Plaintiffs allege that they negotiated two leases for office spaces in Austin, one on Balcones Drive and one at an office complex named Canyon Hills. (*Id.* at 101; Dkt. 4-9, at 5). Plaintiffs sought those leases because HXXB USA expects to hire up to twenty employees in Austin. (Am. Compl., Dkt. 4, at 18). Plaintiffs further allege that after negotiating these leases, issuing a deposit, and spending money on overhead costs, they could not sign their leases for office space because they fear civil and criminal penalties under SB 17. (*Id.* at 16). Plaintiffs also allege that they have never been listed on the U.S. Department of Defense's list of Chinese Military Companies Operating in the United States, and that no evidence supports the notion that their entering a lease for office space in Texas poses a national security threat. (*Id.* at 17).

## II. LEGAL STANDARDS

### a.  Rule 12(b)(1) Motion

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."

*Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### b. Rule 12(b)(6) Motion

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider

4

documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

#### a.   Rule 12(b)(1) Motion

Because Plaintiffs are suing Paxton, a state official, in his official capacity, Plaintiffs must demonstrate that an exception to sovereign immunity exists. *Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) ("Generally, state sovereign immunity precludes suits against state officials in their official capacities."). Plaintiffs argue that the *Ex parte Young* doctrine gives this Court jurisdiction over this case. 209 U.S. 123 (1908). The legal fiction of *Ex parte Young* provides an "exception to Eleventh Amendment sovereign immunity" in the subset of cases to which it applies. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). The exception permits federal courts to enjoin prospective unconstitutional conduct by "individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature." *Ex parte Young*, 209 U.S. at 155–56.

To be a proper defendant under *Ex parte Young*, a state official must have "some connection with the enforcement of" the law being challenged. *Id.* at 157. Although the Fifth Circuit admits that its decisions have not been "a model of clarity" on what constitutes a sufficient connection to enforcement for *Ex parte Young* purposes, it has provided "guideposts" to aid the analysis. *Tex. All.*

*for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022). "These guideposts help ensure that a defendant has 'some connection with the enforcement of the challenged act,' in the absence of which the State becomes the real party, in violation of the Eleventh Amendment." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 330 (5th Cir. 2024) (quoting *Ex parte Young*, 209 U.S. at 157).

In *Mi Familia Vota v. Ogg*, the Fifth Circuit elaborated on the guideposts, which are: "(1) the state official has 'more than the general duty to see that the laws of the state are implemented,' i.e., a 'particular duty to enforce the statute in question'; (2) the state official has 'a demonstrated willingness to exercise that duty'; and (3) the state official, through her conduct, 'compel[s] or constrain[s persons] to obey the challenged law." *Id.* at 325 (quoting *Tex. All. for Retired Ams.*, 28 F.4th at 672). In *Ogg*, plaintiffs challenged several provisions of a Texas election statute, alleging that Harris County District Attorney Kim Ogg was a proper *Ex parte Young* defendant. (*Id.* at 318). The appeals court held that their claims were barred by sovereign immunity.

In assessing the first guidepost—whether Ogg had a particular duty to enforce the statute—the Court explained that "mere authority" over whether to bring criminal charges is not enough to invoke the *Ex parte Young* exception. *Id.* at 326. Because local prosecutors have "complete discretion" over whether to enforce the law, they do not have the "specific duty" required for *Ex parte Young* to apply. *Id.* "Discretionary authority to act, on its own, is insufficient to give rise to a particular duty to act." *Id.* at 327.

On the second guidepost—Ogg's demonstrated willingness to enforce the challenged provisions—plaintiffs must show that "the state officials [] have taken some step to enforce the statute." *Id.* at 329 (internal quotation marks omitted). This requires "'some scintilla of affirmative action by the state official." *Id.* (internal quotation marks omitted). "To determine whether an official has demonstrated a willingness to enforce a challenged statute, we consider the prior or contemporaneous affirmative acts of the named official." *Id.* at 330. "[W]hat is sufficient for

standing will not necessarily establish an enforcement connection" under *Ex parte Young*. *Id.* at 330. Thus, courts cannot "assume a credible threat of prosecution in the absence of compelling contrary evidence." *Id.* at 329 (quoting *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020), *as revised* (Oct. 30, 2020). While that may be enough to establish standing to bring a pre-enforcement challenge, it is not enough to satisfy *Ex parte Young*'s enforcement connection requirement. *Id.*

Finally, on the third guidepost of whether Ogg compelled or constrained plaintiffs, the court ruled in the negative. In doing so, the court rejected plaintiffs' argument that the challenged statute's existence "coupled with Ogg's authority to prosecute criminal cases constrained the Plaintiffs because of their fear of prosecution." *Id.* at 332. "Although this fear of prosecution may be sufficient for standing, it is insufficient to demonstrate compulsion or constraint under [] *Ex parte Young*" because "Ogg has neither enforced the challenged statute against anyone or threatened to do so." *Id.* The appeals court accordingly held that Ogg was not a proper *Ex parte Young* defendant. *Id.* at 333.

In his Motion to Dismiss, Paxton relies on *Ogg* to assert that he is entitled to sovereign immunity from Plaintiffs' claims, because (1) SB 17 creates a discretionary, not mandatory, duty to enforce violations; and (2) Paxton had not taken steps to enforce the challenged provisions. (Mot. Dismiss, Dkt. 11, at 11−13). In response, Plaintiffs argue that (1) SB 17 imposes a mandatory duty on Paxton to enforce violations of the statute; (2) that courts are to assume a credible threat of enforcement absent compelling contrary evidence; and (3) that even though Paxton had not yet taken steps to enforce the challenged provisions, the assertions in the Motion itself about Plaintiffs acting "nefariously" show a "future threat of enforcement." (Resp., Dkt. 12, at 16−17). Reviewing the statute alone, the Court agrees with Paxton that the word "may" creates discretionary authority to enforce and that the statutory language requiring Paxton to investigate potential violations alone would not create a specific duty to enforce the statute under the Fifth Circuit's holding in *Ogg*. *See*

Tex. Gov. Code § 311.016 ('[m]ay' creates discretionary authority or grants permission or a power," and "'[s]hall' imposes a duty").

At the time of the briefing on the Motion to Dismiss, too, Plaintiffs did not dispute that Paxton had yet to enforce SB 17. (Resp., Dkt. 11, at 10). Instead, Plaintiffs relied on the language in *Ogg* that "when dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *Ogg*, 105 F.4th at 329 (citing *Speech First, Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020)). However, that quote was part of the Fifth Circuit's description of how the district court had incorrectly analyzed standing instead of *Ex parte Young*'s enforcement connection requirement; as described above, the Fifth Circuit also said that the sovereign immunity enforcement-connection analysis differs from the standing inquiry.[3] To Plaintiffs' third argument, the Court does not find that Paxton's language in the Motion to Dismiss (e.g., the word "nefarious") suffices to establish Paxton's willingness to enforce the challenged provisions, as Plaintiffs claim. (Resp., Dkt. 12, at 17). The Amended Complaint alone therefore would lead the Court to dismiss Plaintiffs' claims, given the discretionary nature of Paxton's enforcement authority under SB 17 itself and given the lack of further evidence of Paxton's willingness to enforce.[4]

Subsequently, however, Plaintiffs filed a Motion for Preliminary Injunction which contains evidence demonstrating Paxton's willingness to enforce and duty to enforce the statute. The Court

---

[3] Also, because Plaintiffs neither argue that their expressive activity is restricted nor bring a First Amendment claim, this presumption of enforcement also does not apply to their standing arguments. *See Wang v. Paxton*, 161 F.4th 357, 362 (5th Cir. 2025) ("Plaintiffs enjoy a presumption of enforcement only in the First Amendment context") (quoting *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 782−83 (5th Cir. 2024)).

[4] As this Court has previously explained, the Court fears that *Ogg* makes *Ex parte Young* easily avoidable and severely limits plaintiffs' ability to seek pre-enforcement review of constitutional violations; nevertheless, the Court is bound by the opinion. *See Fund Texas Choice v. Deski,* 790 F. Supp. 3d 534, 550 (W.D. Tex. 2025).

may consider the facts not in the complaint, but otherwise in the record, on a Rule 12(b)(1) motion. *Lane*, 529 F.3d at 557. The Court finds that the evidence attached to the Motion for Preliminary Injunction about Paxton's press release and passage of regulations implementing SB 17 is relevant both to the *Ex parte Young* inquiry and the standing analysis that this Court must conduct at the Rule 12 stage. This includes, among other pieces of evidence, evidence of the following from March 2026:

- A newly enacted rule stating that Paxton "shall maintain a designated enforcement unit responsible for receiving, reviewing, investigating, and enforcing compliance with" the challenged provisions, which "shall refer violations to the appropriate licensing or regulatory body," (Dkt. 31-5);

- A newly enacted rule stating that Paxton "shall consult, as necessary, with the [Secretary of State ('SOS')], Texas Real Estate Commission, Texas Department of Insurance, and other relevant regulatory agencies to ensure the uniform implementation and enforcement of" the challenged provisions, (Dkt. 31-8);

- A preamble to those rules, stating that they "establish[] procedures and standards to facilitate the uniform . . . enforcement of" the challenged provisions and "ensure effective . . . enforcement processes." (Dkt. 31-2); and

- A press release from Paxton stating: "My office will use every tool available to prevent our nation's enemies from gaining a foothold on Texas soil." (Dkt. 31-1, at 2).

The Court finds that these pieces of evidence are relevant to the *Ex parte Young* inquiry under *Ogg* and standing analysis it must conduct when ruling on Paxton's Rule 12(b)(1) Motion, (Dkt. 11), and notes that they differ significantly from the allegations in Plaintiffs' Amended Complaint, (Dkt. 4), and response brief to the Motion to Dismiss, (Dkt. 12). While the Court may resolve disputed facts in the record when considering a Rule 12(b)(1) Motion,[5] *see Lane*, 529 F.3d at 557, the Court declines to resolve the facts in either party's favor without reviewing Paxton's responsive briefing. As such,

---

[5] The Court also does not consider these facts to be "undisputed," given that Paxton has yet to meaningfully have a chance to respond to them. *Lane*, 529 F.3d at 557.

the Court will order Plaintiffs to re-plead their complaint and will moot Paxton's Motion to Dismiss as to Plaintiff HXXB USA, (Dkt. 11), in light of the forthcoming second amended complaint.

### b. Rule 12(b)(6) Motion

Turning to Paxton's Rule 12(b)(6) Motion, Paxton argues that Plaintiff HXXB is a corporation registered and located in China that lacks standing to sue in federal court because it has no constitutional rights. Foreign organizations outside United States territory do not possess rights under the U.S. Constitution. *Agency for Int'l. Dev. v. All. for Open Soc'y Int'l*, Inc. 591 U.S. 430, 434 (2020); *see also U.S. v. Verdugo-Urquidez*, 494 U.S. 259, 273–274 (1990)). In response, Plaintiffs cite cases asserting that foreign plaintiffs may have standing to sue in U.S. courts. (Resp., Dkt. 11, at 14 (citing *Servicios Azucareros De Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 804 (5th Cir. 2012)). In *Servicios*, the Fifth Circuit held that there was no per se bar on a foreign corporation asserting a breach-of-contract claim against a U.S. company in U.S. court. 702 F.3d at 804. This case is distinct from *Servicios*, however, in that HXXB seeks to assert rights under the Constitution; HXXB does not bring a breach-of-contract claim (as in *Servicios*) or a statutory claim (as may be permissible for nonresident citizens of foreign countries). *See Agency for Int'l Dev.*, 591 U.S. at 435 ("Congress may seek to enact laws that afford foreign citizens abroad statutory rights"). Plaintiffs do not cite any other binding caselaw standing for the proposition that a foreign organization headquartered abroad may assert constitutional claims in a U.S. court.[6] HXXB also cannot assert claims solely on behalf of HXXB USA, its United States subsidiary, because as a separate organization incorporated under a foreign country's laws, HXXB "remain[s] legally distinct from the American organization." *Id.* at 436. Another district judge in the Austin Division, considering a claim brought by nonresident Chinese nationals located abroad challenging SB 17, similarly held that they

---

[6] Plaintiffs discuss D.C. Circuit cases that were decided before *Agency for International Development*. (Resp., Dkt. 11, at 21). Plaintiffs also misattribute *Cardenas v. Smith*, 733 F.2d 909 (D.C. Cir. 1984) to the Fifth Circuit. (*Id.*).

could not assert constitutional rights in federal court under *Agency for Int'l Dev.*, 591 U.S. at 435. *Huang v. Paxton*, No. 1:25-CV-1509, 2025 WL 3654180, at *3 (W.D. Tex. Dec. 9, 2025).[7] As such, Plaintiff HXXB is dismissed for failure to state a claim.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Paxton's Motion to Dismiss, (Dkt. 11), is **GRANTED** as to Plaintiff HXXB. Plaintiff HXXB's claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that Paxton's Motion to Dismiss, (Dkt. 11), is **MOOT** as to Plaintiff HXXB USA in light of the allegations contained in the Motion for Preliminary Injunction, (Dkt. 31). Plaintiff HXXB USA is **ORDERED** to file a second amended complaint on or before **August 6, 2026**. Paxton is **ORDERED** to file a Second Motion to Dismiss and Response to Plaintiff HXXB USA's Motion for Preliminary Injunction, (Dkt. 31), and Motion to Certify Class, (Dkt. 31), on or before **August 20, 2026**. Plaintiff HXXB USA's reply will be due **August 27, 2026.** Alternately, the parties may jointly propose a scheduling order for briefing these three motions on or before **August 6, 2026**.

**SIGNED** on July 23, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[7] Plaintiffs' response to this case is to point out that Plaintiff HXXB USA is incorporated in the United States, but Plaintiffs do not meaningfully respond to Judge Albright's order as to Plaintiff HXXB. (Resp., Dkt. 12, at 15).

11